## COMMONWEALTH *vs.* JOHN M. McCAMBRIDGE.

No. 96-P-1174.

Suffolk. November 7, 1997. - February 13, 1998.

Present: ARMSTRONG, PORADA, & LENK, JJ.

*Constitutional Law,* Search and seizure. *Search and Seizure,* Exigent circumstances. *Error, Harmless. Necessity. Firearms. Practice, Criminal,* Instructions to jury, Exhibits. *Homicide.*

In a criminal case, the defendant failed to demonstrate that ambulance attendants' recovery of a gun that fell from the defendant's clothing as he was being placed in an ambulance constituted a warrantless search and seizure, and the judge correctly denied the defendant's motion to suppress the gun. [289-290]

At the trial of a murder indictment in which the defendant was convicted of manslaughter, any error in the admission in evidence of the defendant's blood-stained clothing was harmless beyond a reasonable doubt in light of the defendant's admission that he fought with and shot the victim. [290-291]

At the trial of an indictment alleging unlawful possession of a firearm, the evidence warranted an instruction to the jury on the defense of necessity; where the judge denied the defendant's request for such an instruction, the defendant was entitled to a new trial on that charge. [291-292]

At the trial of a murder indictment in which the defendant was convicted of manslaughter, there was no risk that the jury could have misinterpreted the judge's instructions on self-defense. [292]

In a murder case in which the defendant was convicted of manslaughter, the defendant demonstrated no prejudice from the judge's refusal to mark the victim's criminal record for identification at the defendant's sentencing hearing. [292-293]

INDICTMENTS found and returned in the Superior Court Department on November 30, 1993.

Pretrial motions to suppress evidence were heard by *Elizabeth B. Donovan,* J., and the cases were tried before her.

*Robert L. Sheketoff* for the defendant.

*Linda M. Poulos,* Assistant District Attorney (*James J. Larkin,* Assistant District Attorney, with her) for the Commonwealth.

PORADA, J. A grand jury returned indictments against the defendant for murder in the first degree, unlawful possession of a firearm, and various motor vehicle offenses. The indictments arose out of a single vehicle crash following which the defendant was found behind the driver's wheel of the vehicle and the body of Richard Doyle was found outside the vehicle under the rear wheel on the driver's side with two bullet holes in him. A jury in the Superior Court found the defendant guilty of so much of the murder indictment as charged voluntary manslaughter and guilty of all the other charges except for one of the motor vehicle offenses.[1] On appeal from the defendant's convictions for manslaughter and illegal possession of a firearm, the defendant argues that his convictions should be reversed on the grounds that the judge erred in denying his motion to suppress physical evidence, in failing to instruct the jury on the defense of necessity, and in failing to mark for identification the victim's criminal record. We affirm the conviction for manslaughter and reverse the conviction for illegal possession of a firearm.

We summarize the pertinent evidence presented to the jury. A State police officer in the early morning hours observed a van driving erratically on the Southeast Expressway. As the officer pursued the van, he saw the van swerve in the breakdown lane, hit the right shoulder cement curbing and then fishtail to the left across the expressway into the concrete Jersey barrier. After hitting the barrier, the van went up in the air, flipped over and landed on the driver's side of the van. The officer found the defendant, bleeding, in the driver's area of the van and Doyle, who was not breathing, under the left rear wheel of the car. As the defendant was being removed from the van and placed in an ambulance, a gun fell out of his jacket pocket. The gun, a .32 caliber double-barrelled derringer pistol, was picked up by one of the ambulance attendants and given to one of the State troopers at the scene. Doyle, who was the man found lying underneath the wheel, was transported to the Boston City Hospital, where he was pronounced dead. A bullet hole in his right cheek was discovered by hospital personnel at that time. Doyle's blood alcohol level tested at .22 percent at the hospital.

An autopsy of Doyle's body was performed by the associate medical examiner of Suffolk County. The medical examiner found evidence of numerous abrasions and two gunshot wounds

---

[1]The convictions on the motor vehicle offenses were placed on file.

on Doyle's body. Although he could not say whether the abrasions occurred post mortem or pre mortem, he was of the opinion that the two gunshot wounds occurred prior to Doyle's death. He opined that the first gunshot wound was to Doyle's right cheek and would have resulted in a lot of bleeding; the second gunshot entered Doyle's back and would have resulted in death quickly. He also opined that the decedent had suffered a blow to the head with a linear object consistent with the use of a "billy club" found in the van. The examiner attributed Doyle's death to the multiple gunshot wounds.

A ballistics expert testified that the bullets which were removed from Doyle's body were fired by the derringer pistol recovered from the defendant and that the gun had to be cocked each time the weapon was fired and had a trigger pull of between thirteen and sixteen pounds of pressure. The ballistician also testified about a 9 millimeter Smith and Wesson semiautomatic pistol that was recovered from the van after the accident: the hammer of the gun was cocked, the safety was off, and there was one live cartridge in the chamber and seven live cartridges in the magazine. He further testified that if one pulled the trigger, the gun would have fired.

A forensic chemist at the State police crime laboratory who had examined the van, the victim's clothes, and the defendant's clothes testified as to the results of her examination. She found the victim's blood running down the driver's side door and in blood spatters that traveled in a downward and outward direction on the door. She was of the opinion that for this pattern to have been generated and remain in that fashion, the blood would have had to remain undisturbed for a period of a minimum of five to a maximum of fifteen minutes. She also found a pool of the defendant's blood under the driver's seat. On the passenger side of the vehicle, she found embedded in the broken windshield hair and tissue consistent with the defendant's hair and tissue. She also found glass fragments from the windshield in the defendant's jacket but none on Doyle's clothes. On the passenger's side sliding door there were traces of blood consistent with Doyle's blood as well as fibers consistent with those taken from a maroon sweater worn by Doyle.

Her examination of the defendant's and Doyle's clothing revealed the following. She found Doyle's blood on the seat and right leg of the defendant's jeans; on the right shoulder and

right cuff of the defendant's Sportsmaster jacket and the right sleeve and right pocket of the defendant's brown jacket. She found the defendant's blood on the defendant's brown jacket, his sweater, and his jacket, as well as on the rear view mirror and the passenger side dashboard. She also found Doyle's blood on his own clothing but none of the defendant's blood. Based on her findings, the forensic expert opined that at the time the decedent was shot he was in the driver's seat of the van, but that at the time of the accident the defendant was probably in the driver's seat area and Doyle near the sliding passenger door. She also opined that the gunshot wound to the victim's back was fired from a distance of three feet or greater.

The defendant testified that Doyle and he were friends and that he went out drinking with him on occasion. He testified that, on the night in question, the two of them had been drinking at a café in Cambridge and they left the café together. Upon leaving, the defendant got into the passenger's side of Doyle's van and Doyle into the driver's seat. The defendant asked Doyle to give him a ride to his former wife's house. Doyle then left the van to make a phone call. Upon his return, Doyle told the defendant that he had to go to Quincy where he had a customer for a gun. With that statement, Doyle reached under his seat and took the derringer pistol out of a bag and threw it onto the dashboard. The defendant asked Doyle to take him home first but Doyle continued to drive without heeding the defendant's request. The defendant got angry and told Doyle that he was drunk, was crazy and to let him out of the van. When Doyle would not let him out of the van, the defendant "blew his stack" and called Doyle a name which implied that Doyle had molested a child, an accusation which when made by the defendant to Doyle in the past had enraged Doyle. With that comment, Doyle pulled out a gun from his waist band, the 9 millimeter Smith and Wesson pistol. The defendant grabbed the victim's arm, pushed it down, and grabbed the derringer from the dashboard. The defendant told Doyle to "back off." The defendant then saw Doyle "pop" the Smith and Wesson, so he shot Doyle with the derringer pistol and had no memory of anything else until he woke up in the hospital.

A forensic expert presented by the defendant testified that when the van flipped over, the person in the driver's seat could be propelled out the passenger's side sliding door from the force of the impact and the shape of the console. He also testi-

fied that a person who received a wound from the derringer could nevertheless remain conscious and active, and possibly become even more aggressive.

Based on the evidence presented, the Commonwealth argued to the jury that the defendant had shot Doyle sometime after they left the café together and that at the time of the accident the defendant was driving Doyle's van in order to dump the body. The defendant argued to the jury that Doyle was driving the van at the time of the accident and that Doyle and the defendant got into a struggle in the van during which the defendant shot Doyle in self-defense.

We now address the defendant's arguments.

1. *Motion to suppress.* The defendant argues that the judge erred in denying his motion to suppress physical evidence, namely the derringer pistol and the defendant's clothing, because she relied upon evidence which was not part of the record. The judge found that the gun fell out of the defendant's clothing as he was being placed in an ambulance and the emergency medical technician turned it over to the police. In doing so, the judge relied upon a police report which was attached to defense counsel's affidavit in support of the defendant's motion to suppress but which was not introduced in evidence at the hearing on the motion. While the defendant argues correctly that it is the Commonwealth's burden to prove that a warrantless search falls within a permissible exception to the warrant requirement and is, therefore, reasonable, *Commonwealth* v. *Berry*, 420 Mass. 95, 105-106 (1995), it is equally well-settled that that burden only attaches to the Commonwealth after the defendant has first demonstrated that a "search and seizure" in the constitutional sense has occurred. *Ibid.* Here, the judge could properly find that the defendant failed to do so where the uncontroverted materials presented to the judge showed only that the gun fell from the defendant's clothing while he was being placed in an ambulance and the gun was turned over by the ambulance attendant to the police. There is no violation of the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights when evidence is seized by private parties who are not acting as agents of the police and subsequently turned over to the police. *Commonwealth* v. *Jung*, 420 Mass. 675, 686 (1995). There was no showing that the ambulance attendants were acting as agents of the police and, thus, the judge properly denied

the defendant's request to suppress as evidence the derringer pistol where the defendant failed to meet his preliminary burden of demonstrating that a warrantless search and seizure by the police occurred. *Commonwealth* v. *Berry*, 420 Mass. at 105-106.

The judge also found that the police had seized the defendant's clothing but that the seizure was lawful because of exigent circumstances. See *Commonwealth* v. *Martino*, 412 Mass. 267, 276 (1992) (reasonable belief as to the potential loss or destruction of evidence created exigent circumstances and warranted warrantless seizure of evidence). Specifically, the judge found that "[g]iven the nature of an emergency room and in particular the BCH there is always a strong likelihood that the hospital personnel being concerned for the patient may not preserve evidence found on items such as clothing. There was a reasonable belief that potential evidence would be lost or destroyed." The defendant argues that there was an absence of evidence to support those findings. The Commonwealth counters that even if this were so the search was nonetheless lawful as a search and seizure incidental to a lawful arrest. The Commonwealth's argument ignores the fact that at the time of the seizure, the defendant was under arrest for operating a motor vehicle while under the influence of liquor, negligent operation of a motor vehicle, and operating a motor vehicle after his license had been suspended. The seizure of his clothing would have had no nexus with those offenses. G. L. c. 276, § 1. *Commonwealth* v. *Johnson*, 413 Mass. 598, 602 (1992). Nor does it appear from the record produced that at the time of the seizure the police had probable cause to arrest the defendant for murder.

In any event, we need not address directly the merits of the defendant's and Commonwealth's arguments relating to the seizure of the clothing, because we are convinced that the admission of the defendant's clothing as evidence constituted harmless error beyond a reasonable doubt. The Commonwealth introduced the defendant's clothes in evidence through its forensic expert to show that the defendant's clothes had Doyle's blood on them. In particular, the Commonwealth relied upon the presence of blood on the defendant's seat of his pants to show that he was the driver of the van and the blood on his right pant leg, right sleeve, and cuff to demonstrate that the defendant either moved Doyle's body or came in contact with it. In light of the fact that the defendant admitted fighting with

Doyle in the van and shooting him, and that there was not only other evidence of a struggle between the two men in the van but also evidence that the defendant did indeed shoot Doyle in the back as well as in the face and may have hit him over the head with a baton in the van, the introduction of the defendant's clothes was of minimal consequence and amounted to no more than harmless error, particularly since the defendant was convicted of manslaughter. See *Commonwealth* v. *Appleby*, 358 Mass. 407, 414 (1970); *Commonwealth* v. *Daggett*, 416 Mass. 347, 352-353 (1993). Contrast *Commonwealth* v. *Benoit*, 382 Mass. 210, 220 (1981).

2. *Defense of necessity.* The defendant argues that the judge erred in refusing to instruct the jury on the defense of necessity in her instructions on the charge of unlawful possession of a firearm. At the close of the judge's final instructions to the jury, the defendant requested that the judge give an instruction on the defense of necessity as it related to this charge. The judge denied the request. We conclude that the instruction should have been given and that reversal of the conviction for illegal possession of a firearm is required.

The defense of necessity is applicable where (1) the defendant is faced with a clear and imminent danger, not one which is debatable or speculative; (2) the defendant can reasonably expect that his action will be effective as the direct cause of abating the danger; (3) there is no legal alternative which will be effective in abating the danger; and (4) the Legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue. *Commonwealth* v. *Hutchins*, 410 Mass. 726, 730 (1991). Here, viewing the evidence in the light most favorable to the defendant, *Commonwealth* v. *Lindsey*, 396 Mass. 840, 842 (1986), the evidence was sufficient to raise the issue of a necessity defense. There is no question that the defendant was faced with a clear and imminent danger, that the defendant, if one accepts his testimony as true, could reasonably expect that his action would abate the danger, and that the Legislature had not acted to preclude the defense by a clear and deliberate choice. The Commonwealth argues, however, that the defendant had an effective legal alternative, namely to wrestle the gun from Doyle. The Commonwealth, however, ignores the fact that the legal alternative must be effective. Based on the defendant's evidence, there was no assurance that an attempt to take the gun away from Doyle would

have been effective in light of the fact that Doyle cocked his gun after the defendant pointed a gun at him and told him to back off. In the circumstances presented, we conclude that the issue of the defense of necessity was raised in this case and the judge should have given a charge to the jury on this defense. See *Commonwealth* v. *Lindsey*, 396 Mass. at 843-845 (the Supreme Judicial Court assumed without deciding that an unlicensed temporary possession of a firearm in a public place might be lawful in spite of G. L. c. 269, § 10[*a*], in certain necessitous circumstances).

We do not agree, however, with defendant's conclusory statement that the failure to do so also had a harmful effect on the manslaughter charge. The defendant argues that the jury could have construed the use of an unlawfully possessed firearm as the use of unreasonable or improper force based on the judge's instructions on self-defense. We have reviewed the judge's instructions on self-defense, to which the defendant took no objection, and find there was no risk that the jury could have interpreted the judge's instructions that way.

3. *Failure to mark Doyle's criminal record for identification.* The defendant requested the trial judge at the sentencing hearing to mark Doyle's criminal record as an "exhibit." The judge denied the request and the defendant claims it was error, for the record was necessary to support his claim that the prosecution had withheld exculpatory evidence from him. The defendant claimed that Doyle's record would have supported his claim that Doyle had been convicted of child abuse, which would have corroborated the defendant's testimony at trial that Doyle pulled a gun on him when the defendant called Doyle a name indicating he was a child abuser, which accusation on a prior occasion had prompted Doyle to threaten the defendant's life if he ever accused him of this offense again. While the defendant pressed for the introduction of the victim's criminal record at trial, he did not object when the judge did not order its production or request that the record be marked for identification. He cannot now be heard to complain that the judge failed to do so at the sentencing stage.

In any event, assuming without deciding that the prosecutor should have produced the victim's record, there was no prejudice to the defendant because he was aware of the victim's record and was prepared to offer such evidence at trial. Moreover, by convicting the defendant of manslaughter, the

jury obviously credited the defendant's testimony that the struggle in the van was precipitated by the defendant's remark about this offense to Doyle. See *Commonwealth* v. *Tucceri,* 412 Mass. 401, 412-414 (1992).

The judgment of manslaughter is affirmed. The judgment of the illegal possession of a firearm is reversed, and the verdict is set aside.

*So ordered.*