Sandra COOMBS, Petitioner,
Appellant,

v.

STATE OF MAINE, Respondent,
Appellee.

No.  99–1245.

United States Court of Appeals,
First Circuit.

Heard Sept. 15, 1999.

Decided Jan. 20, 2000.

Rehearing Denied Feb. 16, 2000.

Gail E. Peabody, for petitioner.

Nancy Torresen, Assistant Attorney General, with whom Andrew Ketterer, Attorney General, and Donald Macomber, Assistant Attorney General, were on brief for respondent.

Before SELYA, Circuit Judge,
CAMPBELL, Senior Circuit Judge, and
BOUDIN, Circuit Judge.

LEVIN H. CAMPBELL, Senior Circuit Judge.

Petitioner-appellant Sandra Coombs appeals from the district court's denial of her petition for habeas corpus relief from her theft conviction in 1996. Coombs contends that she is entitled to relief because the state compelled her confession to the theft by promising not to charge her for possession of a small amount of marijuana discovered at the time of her arrest. We affirm.

## I. FACTUAL BACKGROUND

Coombs was charged with the theft of a sweater from L.L. Bean in Freeport, Maine. On December 16, 1995, her companion, Gifford Campbell, attempted to re- turn a stolen sweater to the L.L. Bean store while Coombs and another individual waited in her car in the parking lot. After detaining Campbell inside the store, a store detective and Freeport Police Sergeant Terry Carter approached Coombs in her car and requested her driver's license and registration. When Coombs retrieved these items from the car's glove compartment, Carter saw a small bag of marijuana in the compartment and seized it.

At the suppression hearing, Carter testified that the marijuana was a "very small quantity," while Coombs testified that it was approximately a quarter of an ounce. At trial, Coombs testified that it was "quite a large amount," "probably say half a sandwich bag full," an amount she later described as "serious." Under Maine law, possession of a usable amount of marijuana would be a civil, not a criminal, infraction. See 22 M.R.S.A. § 2383(1) (1999). Possession of more than one and one-quarter ounces of marijuana gives rise to a presumption that a person is engaging in unlawful furnishing of marijuana, which is a crime. See 17–A M.R.S.A. § 1106(3)(a) (1999).

Coombs agreed to go into the store with Carter to discuss the matter of the sweater. Carter radioed the Freeport Police Department to request a records check on Coombs. Upon discovering that there was an outstanding warrant for Coombs relating to an unpaid fine, Carter placed her under arrest. He then transported her to the police station and gave her Miranda warnings. Coombs indicated that she understood the warnings, and agreed to answer questions. At no point during the interrogation did Coombs request a lawyer or state that she no longer wanted to answer Carter's questions.

Carter testified that he interrogated Coombs for "a couple of hours," but Coombs claimed the questioning went on for "three or four hours." Coombs testified at the suppression hearing that she was handcuffed to a pole during the entire

interrogation, while Carter testified she was only handcuffed for fifteen to thirty minutes while he photographed and finger-printed her, and for additional short peri-ods of time while he was out of the room. Coombs further stated that she was afraid and physically uncomfortable during the interrogation, and cried periodically.

Coombs testified that Carter told her that she "could take two charges of theft and possession of marijuana or [she] could confess to the theft and he'd flush the marijuana." Eventually, Carter asked Coombs to make a "voluntary written statement," and she agreed. At the sup-pression hearing, Coombs stated:

> I set there handcuffed to a pole for three or four hours, you know, and it's either you take the—you know, confess to theft or you take both, and I just figured that would be the easiest way to—you know, instead of being hand-cuffed to the pole for five more hours. I didn't feel there was any other way.

Contrary to Coombs's testimony, Carter denied making any promises to Coombs in exchange for her confession, and denied telling her that he would not charge her with marijuana possession if she confessed to the theft. He testified, however, that he had originally intended to charge her with possession of marijuana and had writ-ten a summons for that offense. More-over, he conceded that after Coombs signed the written confession, he flushed the marijuana down the toilet and tore up the summons.[1] Carter offered no explana-tion for these actions at the suppression hearing; at trial, he testified that he "felt bad" for Coombs.

## II. *PROCEDURAL HISTORY*

On January 11, 1996, Coombs was charged in the state district court with Class E theft pursuant to 17–A M.R.S.A. § 353 (1983). *See State v. Coombs*, No.

95–03959 (Maine Dist. Ct., Div. Bath–Brunswick). Class E theft is punishable by no more than six months' imprison-ment. *See* 17–A M.R.S.A. § 1252(2)(E). Coombs pleaded not guilty at her arraign-ment. On February 26, 1996, she filed a motion to suppress her written confession on the ground that the confession had been compelled by the state's promise to drop the marijuana charge, and was therefore involuntary under the Fifth Amendment to the United States Constitution.

After an evidentiary hearing on the sup-pression motion, the Maine district court ("the suppression court") denied the mo-tion. The suppression court found, inter alia, that Coombs was read her Miranda warnings at the station house; indicated that she understood the warnings; did not request counsel; did not tell Carter that she wanted to stop answering questions; was handcuffed to a horizontal rail during some intermittent periods of time during the interrogation when she was left alone by Carter, who was going between Coombs's room and another suspect's room; and was interrogated for approxi-mately two to three hours. As to Carter's alleged promise of leniency in exchange for Coombs's confession, the court stated:

> I'm satisfied that there were no prom-ises which would give rise to a constitu-tional infirmity, and I'm satisfied beyond a reasonable doubt that the con—that the admission or the statement or what-ever is in this was, in fact, voluntary.

Coombs's confession was admitted into evidence at her trial, which took place in the Maine Superior Court. On September 10, 1996, following a two-day trial, the jury returned a guilty verdict. The court sen-tenced Coombs to thirty days' imprison-ment, but stayed the sentence pending ap-peal and the instant proceedings.

On September 27, 1996, Coombs appeal-ed from her conviction to the Maine Su-preme Judicial Court sitting as the Law

---

1. Maine law prohibits the destruction of phys-ical evidence that might aid in the discovery, apprehension, or conviction of a person ac-

cused of a crime. *See* 17–A M.R.S.A. § 753(1)(c)(1983).

Court pursuant to 15 M.R.S.A. § 2115 and M.R.Crim. P. ·37. Her appeal focused on the voluntariness of her confession and the voluntariness of her waiver of Miranda rights. The Law Court affirmed Coombs's conviction on January 2, 1998. *State v. Coombs,* 704 A.2d 387 (Me.1998). Accepting the suppression court's findings that Coombs was handcuffed only intermittently (which the Law Court construed, based on Carter's testimony, to have been fifteen to thirty minutes) and that proper Miranda procedures were followed, the Law Court rejected Coombs's argument that her theft confession should have been suppressed. *See id.* at 391. On the question of whether the confession was involuntary because it was given in exchange for Carter's promise not to charge her with marijuana possession, the court stated:

> A confession motivated by a promise of leniency by a person with apparent authority to execute the promise is involuntary and inadmissible. *State v. Tardiff,* 374 A.2d 598, 601 (Me.1977). At the suppression hearing, Sergeant Carter testified that he did not promise Coombs anything in exchange for her confession and, although he conceded that he flushed the marijuana down the toilet, he denied telling Coombs that she would not be charged with possession if she confessed to the theft. Although Coombs testified to the contrary, the suppression judge, as the fact finder, was free to accept Sergeant Carter's testimony over Coombs'. *See State v. Larrivee,* 479 A.2d 347, 349 (Me.1984); *State v. Knights,* 482 A.2d 436, 442 (Me. 1984). The trial court's finding is based on competent evidence and is not clearly erroneous.

*Id.* The Law Court also rejected Coombs's contention that that finding was ambiguous:

> The suppression judge found that "there were no promises which would give rise to a constitutional infirmity[.]" Coombs contends that this finding is ambiguous, that it is unclear whether the suppres-

sion judge found that no promise had been made or that a promise of no constitutional significance had been made. Because we assume that the suppression judge found for the prosecution on all issues of fact necessarily raised by his denial of the motion to suppress, *State v. Cefalo,* 396 A.2d 233, 239 n. 12 (Me. 1979), we reject Coombs' contention.

*Id.* at 391 n. 4.

On April 1, 1998, Coombs filed a petition for a writ of certiorari in the United States Supreme Court, again on Fifth Amendment grounds. The Court denied her petition on May 18, 1998. *Coombs v. Maine,* 523 U.S. 1129, 118 S.Ct. 1819, 140 L.Ed.2d 956 (1998). Next, on October 5, 1998, she filed a petition for a writ of habeas corpus in the federal District Court for the District of Maine, limiting her argument to the voluntariness of her confession. The magistrate judge held that the Anti–Terrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA"), on which the state relied, did not apply to Coombs's habeas petition. Rather, he applied a pre-AEDPA standard, which permitted state court findings of fact to be overturned only if "not fairly supported by the record." The magistrate judge concluded that the voluntariness of Coombs's confession was supported by Carter's testimony. He went on to hold that his conclusion would be the same even under an independent review of the totality of the circumstances.

On January 11, 1999, the district court affirmed the magistrate judge's recommended decision and dismissed Coombs's petition, but for reasons other than those set forth by the magistrate judge. *See Coombs v. Maine,* Civ. No. 98–346–P–C (D.Me. Jan. 11, 1998). The district court held that AEDPA applied to Coombs's petition, so that the state court's factual findings were "presumed to be correct" pursuant to 28 U.S.C. § 2254(e)(1). It further noted that AEDPA permitted it to grant the petition only if the trial court's determination "was contrary to ... clearly es-

tablished federal law as decided by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d)(1) & (2). The district court concluded that the suppression court's decision was neither contrary to clearly established federal law nor based on an unreasonable determination of the facts. Coombs timely filed a notice of appeal to this court on January 22, 1999.

## III. *DISCUSSION*

█ In reviewing a ruling on a petition for a writ of habeas corpus, we examine the district court's legal conclusions de novo. *See Simpson v. Matesanz,* 175 F.3d 200, 205 (1st Cir.1999). As the district court correctly held (and the parties do not contest), the standard of review to be applied is set forth by Congress in the AEDPA statute. AEDPA provides that in a habeas proceeding, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). For this purpose, "factual issues" are defined as "basic, primary, or historical facts: facts 'in the sense of a recital of external events and the credibility of their narrators.'" *Bryson v. Ward,* 187 F.3d 1193, 1211 (10th Cir.1999), quoting *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). *See also Thompson v. Keohane,* 516 U.S. 99, 112–13, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995) (interpreting pre-AEDPA version of habeas statute).[2]

█ A state court's ultimate conclusions, including its legal rulings, are reviewed pursuant to another clause of AEDPA, allowing habeas relief only where the state court's adjudication

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This provision governs not only pure issues of law, but mixed questions of law and fact in which legal principles are applied to historical facts. *See Trice v. Ward,* 196 F.3d 1151, 1169 (10th Cir.1999); *Sanchez v. Gilmore,* 189 F.3d 619, 623 (7th Cir.1999). *See also O'Brien v. Dubois,* 145 F.3d 16, 22–23 (1st Cir.1998).

█ If the suppression court upheld the confession because it credited Carter's testimony that he had made no promise to flush the marijuana in return for Coombs's confession to theft, Coombs's case for federal habeas relief largely evaporates. Such a state court finding of "basic, primary, or historical facts" based on a credibility determination is "presumed to be correct," subject only to rebuttal by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). We find no rebuttal of that nature here.

Coombs's argument on appeal from the denial of her habeas petition is that the state suppression court's own finding that "there were no promises which would give rise to a constitutional infirmity" fell short of indicating that it credited Carter's version of events rather than Coombs's. In the absence of an express finding, Coombs urges, the suppression court possibly may have accepted Coombs's version—that Carter promised to get rid of the marijuana in exchange for a confession of theft—yet still concluded, as a matter of law, that Coombs's confession was voluntary. In that case, Coombs contends, she has raised

2. For purposes of Coombs's petition, AEDPA did not meaningfully alter the standard for reviewing determinations of fact. *See* 28 U.S.C. § 2254(d) (repealed 1996); *Bryson,* 187 F.3d at 1211.

a federal constitutional issue meriting habeas review.

To accept Coombs's position, however, we would have to reject the Maine Law Court's interpretation of precisely what action was taken by the suppression court, a court under its jurisdiction. The Law Court clearly believed that the suppression court had credited Carter's testimony that he did not promise Coombs anything in exchange for her confession. In its opinion, after setting forth the state's rule that a confession motivated by a promise of leniency "is involuntary and inadmissible," the court went on to recite Carter's denial of having made any such promise. *Coombs,* 704 A.2d at 391. It then stated that while Coombs testified to the contrary, the suppression court, as fact finder, "was free to accept Sergeant Carter's testimony over Coombs's" and that "the trial court's finding is based on competent evidence and is not clearly erroneous." *Id.* The Law Court thus plainly construed the suppression court as having based its finding of voluntariness on acceptance of Carter's version of the facts. Indeed, to have accepted Coombs's version would seemingly be inconsistent with the legal premise stated at the outset of its discussion; instead, it reasonably assumed that the suppression court shared its understanding of the governing law, as previously articulated by the Law Court. Moreover, in footnote 4, the court specifically rejected Coombs's contention that the suppression court's finding was ambiguous, opining that the suppression court "found for the prosecution on all issues of fact necessarily raised by his denial of the motion to suppress." *Id.* at 391 n. 4. Even the Law Court justice writing in dissent agreed that the majority assumed a finding that no promise was made. *See id.* at 393.

■ Hence, were we to speculate that the suppression court credited Coombs, we would be rejecting an authoritative interpretation by Maine's highest court of the findings of a subordinate court—and would be doing so on an issue that, although close, was resolved well within reasonable parameters. Under the circumstances, we can see no justification, even were we so inclined, for substituting our own different theory as to what the suppression court might have intended. *Cf. Miller v. Fenton,* 474 U.S. 104, 112, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985) (federal habeas court must "give great weight to the considered conclusions of coequal state judiciary"). Additionally, we cannot conclude, given the fact of Carter's testimony, that the suppression court's decision, as so construed by the Law Court, was based on an unreasonable determination of the facts in light of the evidence presented in the state proceedings. We hold, therefore, that habeas review is barred under 28 U.S.C. §§ 2254(d)(2) and (e)(1).

To keep the record clear, it is less apparent to us than to the Maine Law Court that if a promise had been made it automatically would have rendered the confession involuntary. *See, e.g., United States v. Byram,* 145 F.3d 405, 407 (1st Cir.1998) (noting that Supreme Court has "confined" early common-law rule that "confessions produced by promises not to prosecute or offers of leniency were often excluded as involuntary."); *Cole v. Lane,* 830 F.2d 104, 109 (7th Cir.1987) (holding that promise of leniency is necessary, but not sufficient, condition of finding of involuntariness); *United States v. Parker,* 549 F.2d 1217, 1220 (9th Cir.1977) (confession not involuntary where defendant questioned by federal agents for four hours despite disputed testimony concerning use of promises and physical force by agents).

*Affirmed.*