John M. McCAMBRIDGE, Petitioner,

v.

Timothy HALL, Superintendent, Respondent.

No. Civ.A. 99–10259 WGY.

United States District Court, D. Massachusetts.

March 29, 2000.

John M. McCambridge, MCI Norfolk, Norfolk, MA, pro se petitioner.

Cathryn A. Neaves, Attorney General's Office, Boston, MA, for Timothy Hall, Superintendent, M.C.I. Norfolk, respondent.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

### I. INTRODUCTION

John M. McCambridge ("McCambridge") petitions this Court for habeas corpus relief pursuant to 28 U.S.C. § 2254. Convicted of manslaughter on January 20, 1995; McCambridge is currently serving a sentence of fifteen to twenty years in state prison. In his petition before this Court (the "Petition"), McCambridge contends that his detention is unlawful because the Massachusetts Superior Court (1) failed to instruct the jury on the defense of necessity, and (2) the prosecutor improperly withheld material exculpatory evidence. *See* Pet. at ¶ 12. By Memorandum and Order of September 8, 1999, *McCambridge v. Hall*, 68 F.Supp.2d 1, 4 (D.Mass.1999), this Court previously dismissed a third claim in his Petition relating to allegedly unlawfully seized clothing admitted in evidence at his trial.

## II. *FACTUAL BACKGROUND*

In November 1993, a Suffolk County grand jury indicted McCambridge for first degree murder, unlawful possession of a firearm, operating a motor vehicle after license revocation, operating a motor vehicle under the influence of alcohol, and operating a motor vehicle to endanger. *See* Resp't's. Supplemental Answer, Ex. 2. The indictments arose out of a vehicle crash following which McCambridge was found behind the steering wheel of the vehicle and the body of Richard Doyle ("Doyle"), with two gunshot wounds, was found outside the vehicle under the rear wheel on the driver's side.[1] On January 20, 1995, a jury found McCambridge guilty on the lesser included offense of manslaughter, unlawful possession of a firearm, operating under the influence, and operating to endanger. *See McCambridge*, 44 Mass.App.Ct. at 286, 690 N.E.2d 470. The jury acquitted McCambridge of operating after revocation. *See id.* On January 25, 1995, McCambridge was sentenced to a term of fifteen to twenty years in state prison for the manslaughter conviction and to a concurrent term of three to five years for the unlawful possession conviction.

McCambridge appealed his convictions to the Massachusetts Appeals Court, raising the following issues for review: (1) "The trial court erroneously denied the defendant's motion to suppress physical evidence by relying on material not produced at the evidentiary hearing,"; (2) "The trial court violated the defendant's state and federal constitutional rights to due process by refusing to charge on necessity,"; and (3) "The trial court erred by not requiring [Doyle's] criminal record to be made part of the record, and the prosecutor may have violated the defendant's state and federal due process rights by not disclosing that record." Resp't's Supplemental Answer, Ex. 1 at 26, 28, 31. In a Supplementary Brief and Appendix, McCambridge raised the issue of whether the trial court violated his constitutional rights by denying his motion to dismiss the indictments due to an alleged withholding of exculpatory evidence from the grand jury. *See id.,* Ex. 2 at 1.

The Appeals Court affirmed McCambridge's manslaughter conviction, but reversed his conviction for unlawful possession of a firearm, reasoning that the trial justice should have instructed the jury on the defense of necessity with respect to the count for unlawful possession. *See McCambridge*, 44 Mass.App.Ct. at 291, 690 N.E.2d 470. McCambridge filed an application for leave to obtain further appellate review with the Supreme Judicial Court on March 5, 1998. He presented the following issues for review: (1) whether the Appeals Court improperly concluded that the admission of illegally seized items in evidence was harmless error; (2) whether the Commonwealth bears the burden of showing that an item which was on the defendant's person before he became unconscious was legally obtained; (3) whether "the trial court's erroneous failure to charge on necessity as to the gun offense impact[ed] the murder indictment and self defense claim by leading the jury to believe that the defendant's use of the gun was, as matter of law, unlawful and improper"; and (4) whether "the prosecutor violate[d] the defendant's state and federal due process rights in the manner in which he withheld the alleged victim's record and exploited that issue." Resp't's Supplemental Answer, Ex. 8 at 5–6.

The Supreme Judicial Court denied McCambridge's application for further review on March 27, 1998. *See id.,* Ex. 10. McCambridge filed this petition for habeas corpus relief on January 11, 1998. On September 8, 1999, this Court partly granted Respondent's motion to dismiss, ruling that McCambridge's claim relating to seized clothing was merely a variation on his Fourth Amendment argument that was resolved in state court, and was non-

---

1. For a more complete narrative of the incident, see *Commonwealth v. McCambridge*, 44 Mass.App.Ct. 285, 286–89, 690 N.E.2d 470 (1998).

reviewable on federal habeas review under *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). His remaining two claims are addressed herein.

### III. DISCUSSION

#### A. The Superior Court's Failure to Charge the Jury on the Concept of Necessity

#### 1. Background

McCambridge's first claim for habeas relief is based upon the trial court's failure to charge the jury on the concept of necessity. Some background is necessary to follow the logic of McCambridge's argument.

At his trial, McCambridge testified that he and the victim Doyle were friends who, on the night in question, were on their way home from a café in Cambridge. *See McCambridge*, 44 Mass.App.Ct. at 288, 690 N.E.2d 470. Doyle, who was driving, wanted to make a stop in Quincy, but McCambridge wanted to go home first. A heated argument ensued during which, McCambridge testified, he called Doyle a name which implied that Doyle had abused a child, an accusation which in the past had enraged Doyle. In response to that comment, Doyle pulled out a 9mm Smith & Wesson gun from his waist band. McCambridge, reacting to the threat, grabbed a derringer pistol from the dashboard (where Doyle had placed it minutes earlier). McCambridge fired that gun at Doyle when he saw Doyle cock the hammer of his own gun. *See id.* The vehicular accident followed. McCambridge claimed to have no memory of anything after he fired the derringer. The pistol was later found in his possession when it fell out of his clothing while he was being loaded into the ambulance. McCambridge's theory at trial was self-defense.[2]

■ At the close of the final instructions to the jury, McCambridge requested that the trial justice give an instruction on the defense of necessity as it related to the charge of illegal possession of a firearm. *See* Trial Tr. at 4–153, *Commonwealth v. McCambridge*, No. 93–11874 (Mass.Super.Ct. Jan. 19, 1995) (hereinafter "Trial Tr. at ___"). The theory behind the request was that necessity might be a defense to the illegal possession charge when the defendant took possession of and used a nearby available firearm to defend himself from an imminent threat.[3] The trial justice declined so to instruct, and McCambridge's objection was noted. *See id.* at 5–154. On appeal, the Appeals Court of Massachusetts ruled that the necessity instruction should have been given and that reversal of the conviction for illegal possession of a firearm was required. *See McCambridge*, 44 Mass.App.Ct. at 291, 690 N.E.2d 470.

McCambridge now wishes to take his successful appeal on this ground one step further, arguing that the trial court's failure to provide a necessity instruction on the possession charge also taints his conviction for manslaughter. His argument is that the jury might have mistakenly construed the use of an unlawfully possessed firearm as the use of unreasonable or improper force, based on the judge's instructions on self-defense. McCambridge also made this argument to the Appeals Court, which ruled that there was no risk that the jury could have interpreted the instructions in that way. *See McCambridge*, 44 Mass.App.Ct. at 292, 690 N.E.2d 470.

---

**2.** The Commonwealth's theory at trial was quite different: that McCambridge had shot Doyle sometime after they left the café together and that, at the time of the accident, McCambridge was driving Doyle's van in order to dispose of the body.

**3.** The defense of necessity is applicable where: (1) the defendant is faced with a clear and imminent danger, not one which is debat-able or speculative; (2) the defendant can reasonably expect that his action will be effective as the direct cause of abating the danger; (3) there is no legal alternative which will be effective in abating the danger; and (4) the Legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue. *See Commonwealth v. Pike*, 428 Mass. 393, 400, 701 N.E.2d 951 (1998) (quotations omitted).

2. Procedural Default

 McCambridge's first hurdle in pursuing this claim is to demonstrate that he did not procedurally default on it by failing to raise it at his trial. "Federal habeas review is generally precluded when a state court reaches its decision on the basis of an adequate and independent state ground." *Magee v. Harshbarger*, 16 F.3d 469, 471 (1st Cir.1994) (citing *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 [1991]). "Where a state court decision rests on a petitioner's failure to comply with a contemporaneous objection rule at the time of trial, this constitutes an adequate and independent ground." *Id.* (citing *Wainwright v. Sykes*, 433 U.S. 72, 81, 97 S.Ct. 2497 [1977]). *See also Gilday v. Callahan*, 59 F.3d 257, 273–74 (1st Cir.1995); *Boutwell v. Bissonnette*, 66 F.Supp.2d 243, 244–46 (D.Mass.1999).

Counsel for McCambridge requested that the trial justice provide an instruction of necessity concerning the possession charge only. *See* Trial Tr. at 4–153. No concern was raised that a failure to charge on necessity with respect to the possession charge might also cause the jury improperly to conclude that the unlawful possession of a firearm must indicate unreasonable force. This specific objection—that the missing necessity charge implicated the elements of the manslaughter charge—was not raised until McCambridge's appeal.

██ Although the seeds were thus sown for the finding of a procedural default on appeal, the Appeals Court of Massachusetts did not invoke procedural default in order to deny this claim of McCambridge's appeal. Rather, the Appeals Court faced the issue on its merits and determined that "there was no risk that the jury could have interpreted the judge's instructions that way." *McCambridge*, 44 Mass.App.Ct. at 292, 690 N.E.2d 470. In order for a state procedural default to bar habeas review in the federal courts, the state must enforce the procedural default and not waive it. *See McCown v. Callahan*, 726 F.2d 1, 3 (1st Cir.) (citing *Wainwright*, 433 U.S. at

87, 97 S.Ct. 2497), *cert. denied* 469 U.S. 839, 105 S.Ct. 139, 83 L.Ed.2d 78 (1984). "[I]f neither the state legislature nor the state courts indicate that a federal constitutional claim is barred by some state procedural rule, a federal court implies no disrespect for the State by entertaining the claim." *County Court of Ulster County, New York v. Allen*, 442 U.S. 140, 154, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

██ Silence by the reviewing court does not always equate with waiver, however. The First Circuit, for example, has recognized that under the special circumstances of the review of a capital case under the "miscarriage of justice" standard provided in Mass.Gen.Laws ch. 278 § 33E, it would be inappropriate to rule that the state had waived the procedural default by the silence of the reviewing court on the waiver issue.

> If federal habeas courts were too ready to find that state "miscarriage of justice" review constitutes "waiver" of the state's procedural rules, the state either would have to convert what is often a speedy reviewing task into a full scale detailed examination of federal law or it would have to abandon miscarriage of justice review altogether.

*McCown*, 726 F.2d at 3–4.

██ This principal was extended in *Puleio v. Vose*, 830 F.2d 1197 (1st Cir.1987), *cert. denied* 485 U.S. 990, 108 S.Ct. 1297, 99 L.Ed.2d 506 (1988). In *Puleio*, the First Circuit declined to conclude that the Commonwealth had waived the procedural default when the Supreme Judicial Court passed upon the merits of the defendant's instructional error claim. The Supreme Judicial Court ruled that the defendant's claim did not demonstrate a substantial likelihood of a miscarriage of justice. *See id.* at 1200. The First Circuit held that the Supreme Judicial Court's review of the claim did not constitute a waiver of any procedural default.

Against this backdrop, it is disingenuous to argue that the SJC's "harmless . . .

beyond a reasonable doubt" finding was intended to incorporate the federal harmless error standard.... We have repeatedly held, and today reaffirm, that SJC review under the discretionary state miscarriage of justice standard will not suffice, in and of itself, to bypass the Commonwealth's contemporaneous objection rule.

*Id.* (citations omitted). On the other hand, if in the course of its review, the Supreme Judicial Court makes it reasonably clear that its reasons for affirming a conviction rest upon its view of federal law, a waiver may be found. *See Doucette v. Vose,* 842 F.2d 538, 539 (1st Cir.1988).

In the case at bar, McCambridge's appeal was not based on the discretionary review provided for in Mass.Gen.Laws ch. 278, § 33E. Rather, it was a direct appeal of his conviction, heard in the Appeals Court of Massachusetts. The Supreme Judicial Court subsequently denied review without a written opinion. The question that remains is whether the rule articulated by the First Circuit concerning Supreme Judicial Court review under section 33E applies to a regular appeal at the Appeals Court level.

█ In *Harris v. Reed,* the Supreme Court held that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (quoting *Caldwell,* 472 U.S. at 327, 105 S.Ct. 2633) (further quotation omitted). The rule announced in *Harris* is implicated only when the state court decision "fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear

from the face of the opinion." *Coleman,* 501 U.S. at 735, 111 S.Ct. 2546 (quotation omitted). Coleman accords with the Supreme Court decision of *Michigan v. Long,* 463 U.S. 1032, 1040–41 , 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), in which it held that the Supreme Court may, on direct review, review a state court decision whose opinion is "interwoven" with federal law if the adequacy and independence of any possible state law ground is not clear from the face of the opinion. An identical rule applies when a federal court sits in habeas review of a state court appellate decision. *See Harris,* 489 U.S. at 262–64, 1989 WL 12718.

█ When a state appellate court *could* have found that the defendant procedurally defaulted a basis for appeal, the question, in light of *Harris,* is whether it did so "clearly and expressly." *Carsetti v. State of Maine,* 932 F.2d 1007, 1010 & n. 1 (1st Cir.1991) (citing *McCown,* 726 F.2d at 3). An examination of the Appeals Court opinion here shows no clear expression of a conclusion of procedural default on McCambridge's jury instructions claim.[4] The Appeals Court did indicate a procedural default with respect to another of McCambridge's claims,[5] thus compelling the conclusion that had the court grounded its decision on the basis of procedural default, it would have so indicated. Although the Appeals Court did not make any mention of federal constitutional law in denying this part of McCambridge's claim, the record shows that McCambridge did raise constitutional arguments. Furthermore, the Appeals Court did not indicate any independent and adequate state ground for its decision here (such as procedural default, the usual suspect). *See Allen,* 926 F.2d at 79 (concluding there was no procedural default when the Appeals Court made no mention of a procedural bar). Thus, the Appeals Court's decision necessarily "intertwined" both state and federal

---

**4.** Nor did it cite or refer to the United States Constitution or to any federal cases, which could also trigger habeas review by negating the independent and adequate state ground for the decision. *See Coleman,* 501 U.S. at

734–35, 111 S.Ct. 2546; *Allen v. Massachusetts,* 926 F.2d 74, 79 (1st Cir.1991).

**5.** *See infra* section III.B. for a discussion of Doyle's criminal record.

law, and the adequacy and independence of any possible state law ground is not clear from the face of this part of the opinion. The habeas petition may therefore be entertained by this Court as to this claim. *See Harris*, 489 U.S. at 263, 109 S.Ct. 1038. This Court concludes that the Appeals Court did not find a procedural default on this claim, and that the issue therefore is now open to habeas review.[6]

### 3. Standards for Habeas Review

■ A state court's ultimate conclusions, including its legal rulings, are reviewed by a federal court pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA"), which allows habeas relief only where the state court's adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d) (1998); *see also Coombs v. Maine*, 202 F.3d 14, 18 (1st Cir.2000); *O'Brien v. Dubois*, 145 F.3d 16, 24 (1st Cir.1998).

Because McCambridge makes no claim under the second part of the inquiry and no issue thereto is observed by this Court, this discussion is limited to whether the decision of the state court was contrary to or involved an unreasonable application of federal law.

McCambridge's claim is not contrary to, or an unreasonable application of, any established federal law. His argument rests on the assumption that a jury, properly charged on a manslaughter offense, may draw, from its own conclusion that the possession of a firearm was illegal, the inference that the force applied therewith, in self-defense, was unreasonable.

■ There is no federal law that requires this level of protection against jury confusion. The jury, if properly instructed, is eminently capable of distinguishing between the use of reasonable and excessive force in the context of self-defense and separating the elements of the various charges against the defendant. McCambridge's position is that the erroneous possession charge may have failed to protect him from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute [manslaughter]." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). "The question at this point, petitioner would submit, is whether a reasonable juror, *because* of the trial court's failure here, could have had an essentially different understanding as to what the judge's instructions on self-defense in fact meant...." Pet'r's Amendment to Mem. Re Ground Two at 2–3. Such an allegedly deficient instruction must be viewed in the context of the overall charge. *See Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973).

6. This conclusion is supported in some measure by the reasoning of McCambridge's claim, as follows. His counsel at trial objected to the failure to instruct the jury on necessity, an error that the Appeals Court concluded warranted reversal of the possession charge. Had the jury instruction been given on the possession charge, the jury would have understood the concept of necessity. In so understanding, they possibly would have acquitted McCambridge on the possession charge and would have been less likely to fall into the trap that McCambridge fears: that their conclusion of "unlawful possession" equated in their minds with "unreasonable force." Thus, the issue is not whether there

was another objection that needed to be made by McCambridge's counsel at trial, but rather whether the failure by the Superior Court to instruct the jury on necessity may have also tainted their understanding of the elements of manslaughter. While an additional request could have been made to the trial justice to instruct the jury that unlawful possession does not legally equate with unreasonable force, that is simply another method by which to achieve the same effect. Thus, by this logic, McCambridge's counsel did not default on the opportunity to challenge the lack of a jury instruction on necessity as it would have related to their understanding of the manslaughter charge.

■ The resolution of a potentially erroneous instruction depends upon how a reasonable juror could have interpreted the instruction. *See Sandstrom v. Montana,* 442 U.S. 510, 514, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The transcript of the jury instructions shows that the trial justice outlined the elements of the manslaughter charge separate and apart from the elements of the possession charge. *See* Trial Tr. at 4–130 to 4–140. Furthermore, the trial justice impressed upon the jury, repeatedly, that every element of the respective charges had to be proved by the Commonwealth beyond a reasonable doubt in order for a conviction to attach. *See id.* at 4–177 to 4–119, 4–124, 4–131, 4–134. The instructions drew no link between the element of reasonable force and the legality or illegality of McCambridge's possession of a firearm.[7] No reasonable juror could construe the court's discussion of excessive force to mean a force that happened to be applied by use of an unlawfully-possessed weapon. Rather, the instructions make it clear that it is the nature of the weapon's force and power that relates to the self-defense theory. The legal ownership of the weapon is not relevant, and no reasonable juror could believe that it was relevant in light of the clear and complete instructions given by the trial court.

McCambridge's argument that the defective possession charge could have caused a reasonable juror to believe that a "conclusive presumption ... existed that petitioner used unlawful force when he shot Doyle" is too tenuous. Pet'r's Amendment to Mem. Re Ground Two at 5. Such a belief could result only through a serious misunderstanding of the elements of manslaughter, triggered perhaps by a misleading jury instruction. No basis for

McCambridge's suggested misunderstanding by the jury is evident in the instructions here. The question put to the jury was not whether McCambridge used an unlawful *device* when defending himself, but rather whether he used excessive *force.* The question for the jury was, therefore, whether using *any* gun was excessive under the circumstances. It would not be relevant to the jury's determination whether the gun was obtained through lawful or unlawful possession. The nature of this inquiry was made quite clear by the trial justice, who at all times instructed the jury that the Commonwealth carried the burden of proof beyond a reasonable doubt. McCambridge's petition for habeas corpus relief on this ground, therefore, fails to demonstrate a decision that is either "contrary to" or an "unreasonable application of" established Supreme Court precedent. *See Coombs,* 202 F.3d at 18.

### B. Failure to Disclose Evidence Favorable to the Defendant

McCambridge claims that the Commonwealth failed to disclose evidence favorable to his case and material to his guilt, in violation of *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). *See also United States v. Bagley,* 473 U.S. 667, 676–78, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *Gilday v. Callahan,* 59 F.3d 257, 267 (1st Cir.1995); *Ouimette v. Moran,* 942 F.2d 1, 9 (1st Cir.1991). The evidence in question is the victim Doyle's criminal record.

McCambridge's theory at trial was that he became involved in a heated argument with Doyle, exacerbated by his comment to Doyle implying that Doyle was a child abuser. McCambridge had made a similar

---

**7.** The instructions were as follows: "Specifically, if the person initiated an assault against the defendant so that the defendant reasonably feared that he was in danger of being killed or suffering grievous bodily harm at the hands of Mr. Doyle, then the defendant has the initial right to use whatever means were reasonably necessary to avert the threatened

harm. But, if the defendant used excessive force, that is, more force than was reasonable or proper under the circumstances of this case or the defendant, himself, became the attacker and the use of such force resulted in the death of his assailant, then that would constitute manslaughter." *Id.* at 4–134.

comment in the past, and Doyle had warned him that another such comment would be met with harsh retribution. After McCambridge again provoked Doyle in this manner, Doyle drew his gun, escalating the incident and introducing the threat to life that McCambridge sought to repel when he grabbed the derringer from the dashboard and shot Doyle. At the trial, McCambridge requested that the prosecution produce Doyle's criminal record, in an attempt to bolster his story that his comment was likely to provoke a violent reaction from Doyle and to show that McCambridge had reason to believe that his life was actually in danger, thus warranting his defensive acts. The trial justice denied the request at trial, and that request was renewed and denied again at the sentencing hearing. *See McCambridge*, 44 Mass. App.Ct. at 292, 690 N.E.2d 470.

The record before this Court indicates that McCambridge is in procedural default on this claim. The Appeals Court wrote, "[w]hile the defendant pressed for the introduction of the victim's criminal record at trial, he did not object when the judge did not order its production or request that the record be marked for identification. He cannot now be heard to complain that the judge failed to do so at the sen-

tencing stage." *Id.* The Appeals Court thus indicates that McCambridge failed to satisfy Massachusetts' contemporaneous objection requirement, a failure that results in a procedural default of the claim on subsequent review.[8]

Procedural default acts as an independent and adequate state ground to uphold the conviction. *See Ortiz v. Dubois*, 19 F.3d 708, 714 (1st Cir.1994), *cert. denied* 513 U.S. 1085, 115 S.Ct. 739, 130 L.Ed.2d 641 (1995). The independent and adequate ground bars federal habeas review unless McCambridge can show "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546.

In order to establish cause for his counsel's failure to object at trial, McCambridge must demonstrate that some objective factor external to the defense impeded defense counsel's efforts to comply with the state's procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Magee*, 16 F.3d at 471–72. No such reason is evident.[9] Apparently McCambridge's

---

8. There is no evidence here that the contemporaneous objection requirement has been applied inconsistently or that the Commonwealth has waived it. *See Burks v. Dubois*, 55 F.3d 712, 716 (1st Cir.1995).

9. McCambridge argues that the prosecutor misled his counsel into believing that Doyle's criminal record was devoid of any charges, thus causing the failure to object. *See* Pet'r's Supplementary Mem. of Law Re Ground Three at 2. Apparently, Doyle's record of conviction and commitment for two counts of child neglect were only revealed later, at the appeal. *See id.* at 2–3. An examination of the trial transcript on this point reveals that the prosecutor did indeed represent that the only thing he had seen on Doyle's record was that he had been charged with abuse, possibly of his wife, a long time before, and that he did not spend any time in jail. *See* Trial Tr. at 4–29. The prosecutor then expressed that he had no objection to the calling of Doyle's brother as a witness to testify to Doyle's crim-

inal history. McCambridge did not do so. The prosecutor also expressed a fair amount of uncertainty about Doyle's criminal record. *See id.* He did not, however, make affirmative assertions that the record was devoid of child abuse charges. The trial justice interrupted the sidebar discussion concerning the contents of the record to make the legal point that Doyle's criminal history was being offered only for McCambridge's state of mind, and therefore the criminal record itself was not relevant evidence. *See id.* at 4–31. The prosecutor agreed that he would only argue, on his closing, as to McCambridge's state of mind. Defense counsel did not pursue the matter further after the trial justice raised the relevance issue, and did not object to the court's decision not to compel production of the record. The failure to object at that stage in the sidebar cannot be said to have been caused by the prosecutor's statements of uncertainty concerning the criminal record. Rather, it was likely caused by the recognition of the legitimacy of the court's conclusion

counsel failed to object either for strategic reasons, through inadvertent mistake, in agreement with the court's legal conclusions of irrelevance, or for some other unarticulated reason. "A mere assertion of attorney inadvertence normally does not constitute sufficient 'cause' to excuse a state procedural default." *Tart v. Massachusetts*, 949 F.2d 490, 496 (1st Cir.1991) (citing *Palmariello v. Superintendent of MCI Norfolk*, 873 F.2d 491, 493 [1st Cir. 1989]).

▮ Nor can McCambridge demonstrate "actual prejudice" from the failure to admit the criminal record in evidence. The record shows that McCambridge was generally aware of the contents of Doyle's criminal record at the time of the homicide. His self-defense theory rests on his knowledge and awareness of Doyle's anger related to the topic of child abuse. The truth and nature of those charges or convictions are not relevant to the self-defense theory. Under the self-defense theory, McCambridge could escape conviction for manslaughter if he reasonably feared that he was in danger of being killed or suffering grievous bodily harm, and used appropriate (non-excessive) force to defend himself. *See* Trial Tr. at 4–134. The actual contents of Doyle's criminal record are not relevant to this analysis because the details of the actual criminal record were not known to McCambridge at the time of the homicide. Therefore, the criminal record could play no role in McCambridge's state of mind. Rather, McCambridge believed, from *whatever* source, that Doyle had a criminal history of child abuse, knew that accusations of child abuse were likely to provoke violence from Doyle, and after such provocation became fearful of his life when Doyle drew a gun. To these facts McCambridge testified at his trial, and the jury must have accepted that his provocation story at least raised some reasonable doubt in order to convict on manslaughter rather than first- or second-degree mur-

der. Nor is the truth of Doyle's criminal record probative of Doyle's anger or willingness to threaten McCambridge's life. In fact, it is impossible to know whether Doyle would have been angrier about the allegations if the allegations had been true or false. The criminal record is therefore not probative of the nature of Doyle's threats for it does not have any tendency to make the existence of his threats more or less probable than it would be without the evidence. *See* Fed.R.Evid. 401. McCambridge's attempt at trial to corroborate his belief that Doyle was ready to kill him by offering evidence of the truth behind the child abuse allegations is unavailing. His attorney's procedural default on this issue cannot be said to have actually prejudiced his case. *See Coleman*, 501 U.S. at 750, 111 S.Ct. 2546. Nor, for the same reasons, could the failure of the Commonwealth to produce the evidence, or the absence of that evidence at trial, have resulted in a fundamental miscarriage of justice. *See Harris*, 489 U.S. at 262, 109 S.Ct. 1038; *Murray*, 477 U.S. at 485, 106 S.Ct. 2639. McCambridge's petition on this ground must be denied.

## IV. CONCLUSION

For the foregoing reasons, McCambridge's petition for habeas corpus relief is DENIED.

---

that the record would be irrelevant in any case, even if it were to show Doyle's convictions for child abuse. If McCambridge's counsel felt that legal conclusion to be incorrect, he should have objected to preserve his rights.