266 F.3d 12 (1st Cir. 2001)
 JOHN M. McCAMBRIDGE, Petitioner, Appellant,
v.
TIMOTHY HALL, SUPERINTENDENT, Respondent, Appellee.
 No. 00-1621
 United States Court of Appeals For the First Circuit
 Heard Nov. 29, 2000
Decided September 24, 2001
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS
 [Hon. William G. Young, U.S. District Judge][Copyrighted Material Omitted][Copyrighted Material Omitted]
 John M. McCambridge, pro se.
 James J. Arguin, Assistant Attorney General, Criminal Bureau, on brief for appellee.
 Before Lipez, Circuit Judge, Campbell and Cyr, Senior Circuit Judges.
 LIPEZ, Circuit Judge.
 
 
 1
 John McCambridge appeals pro se from the denial of his petition for a writ of habeas corpus by the district court. He claims that his conviction in the Massachusetts state court for manslaughter is in violation of his constitutional rights because the prosecution failed to disclose exculpatory evidence and then used the absence of that evidence to impeach his credibility during closing argument. In determining whether McCambridge is entitled to a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1),[1] we examine the opinion of the Massachusetts Appeals Court affirming his conviction. We conclude that the Appeals Court reached a decision that was both contrary to and an unreasonable application of clearly established federal law. Accordingly, we reverse the judgment of the district court.
 
 I.
 
 2
 At trial, the parties agreed that McCambridge shot and killed Richard Doyle during the early morning of November 11, 1993, between the time they left a bar in Cambridge, Massachusetts, and the time the van in which they were riding crashed. The Commonwealth charged McCambridge with first degree murder and attempted to prove that McCambridge shot Doyle shortly after they left the bar and that McCambridge was driving at the time of the accident.
 
 
 3
 McCambridge claimed self-defense, testifying that Doyle was driving the van, and became angry when McCambridge called him a name that referenced Doyle's earlier conviction for child abuse. Further, McCambridge testified that while still driving the vehicle Doyle put a loaded and cocked gun to McCambridge's head. Then McCambridge said that he pushed Doyle's gun away with one hand, located another gun from the dashboard and fired it at Doyle with his other hand. The van crashed moments later. Following the accident, McCambridge was found wedged in the driver's seat of the van, and Doyle's body, still warm, was found pinned under a wheel of the vehicle.
 
 
 4
 The Commonwealth charged McCambridge with first degree murder, weapons violations, and vehicular offenses. Following a four-day trial, the jury found McCambridge guilty of manslaughter, illegal possession of a firearm and two of the three vehicular offenses charged.[2] The Massachusetts Appeals Court affirmed the conviction for manslaughter,[3] and the Supreme Judicial Court declined further review. McCambridge has now served over six years of a fifteen to twenty year sentence.
 
 
 5
 McCambridge filed a petition for a writ of habeas corpus in federal district court. The court denied his petition. We granted a certificate of appealability limited to the claim that the prosecution had failed to comply with the disclosure obligations imposed by Brady v. Maryland, 373 U.S. 83 (1963),[4] and now reverse.
 
 II.
 
 6
 McCambridge asserts that the Commonwealth violated the requirements of Brady in not disclosing exculpatory evidence. "There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). Additionally, because McCambridge is seeking relief from a state court judgment pursuant to 28 U.S.C. § 2254, he must also satisfy the statutory requirement that he demonstrate his eligibility for a writ of habeas corpus. "Habeas review involves the layering of two standards. The habeas question of whether the state court decision is objectively unreasonable is layered on top of the underlying standard governing the constitutional right asserted." Hurtado v. Tucker, 245 F.3d 7, 16 (1st Cir. 2001).
 
 
 7
 Accordingly, McCambridge must satisfy two legal standards. He must show that the Commonwealth denied his constitutional rights under Brady, and he must demonstrate that the Massachusetts Appeals Court made a determination that was contrary to or an unreasonable application of federal law in rejecting that claim, see 28 U.S.C. § 2254(d)(1). The Appeals Court rejected McCambridge's Brady claim on two grounds. See Commonwealth v. McCambridge, 690 N.E.2d 470, 475 (Mass. App. Ct. 1998). First, it ruled that McCambridge was required to object when the prosecutor refused to disclose the exculpatory evidence sought, namely, evidence of Doyle's conviction for child abuse. Second, the court ruled that McCambridge could not show prejudice from the prosecutor's wrongful suppression of that evidence. The court resolved these issues with brief analysis, citing only one Massachusetts case as authority:
 
 
 8
 While the defendant pressed for the introduction of the victim's criminal record at trial, he did not object when the judge did not order its production or request that the record be marked for identification. He cannot now be heard to complain that the judge failed to do so at the sentencing stage.[5]
 
 
 9
 In any event, assuming without deciding that the prosecutor should have produced the victim's record, there was no prejudice to the defendant because he was aware of the victim's record and was prepared to offer such evidence at trial. More importantly, there was no prejudice to the defendant. By convicting the defendant of manslaughter, the jury obviously credited the defendant's testimony that the struggle in the van was precipitated by the defendant's remark about this offense to Doyle. See Commonwealth v. Tucceri, 412 Mass. 401, 412-414, 589 N.E.2d 1216 (1992).
 
 
 10
 Id. Examining both of the state court's conclusions in turn, we hold that the determination of the Appeals Court that McCambridge should have objected is contrary to clearly established federal law, and that the court's conclusion that McCambridge was not prejudiced is an unreasonable application of that law.
 
 III. Nondisclosure of Brady Material
 
 11
 The Supreme Court held in Brady v. Maryland that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The favorable evidence at issue here is the criminal record of the victim, Doyle.[6] McCambridge testified at trial that Doyle became violent when McCambridge called Doyle a name that referred to Doyle's conviction for child abuse. McCambridge also described an incident a few months prior to the accident where he asked Doyle whether he had been convicted of child abuse and Doyle threatened to kill him if McCambridge ever mentioned the topic again. Therefore, Doyle's criminal conviction related to McCambridge's theory of self-defense because it provided an explanation for why Doyle might have become violent in the van. Additionally, McCambridge's testimony about Doyle's earlier threat was significant in assessing McCambridge's state of mind at the time of the shooting for purposes of determining whether he was in reasonable fear of death or serious bodily injury.
 
 
 12
 In charging an unlawful killing, the Commonwealth assumed the burden of proving that McCambridge did not act in self-defense. See Commonwealth v. Reed, 691 N.E.2d 560, 563 (Mass. 1998). The jury might not have found McCambridge guilty of any wrongful killing if it could not reject, beyond a reasonable doubt, McCambridge's testimony that he reasonably perceived that he was in imminent danger of death or serious bodily harm. McCambridge's credibility on this self-defense claim and his perception of Doyle's alleged actions in the van and his earlier threat were thus potentially determinative of the verdict.
 
 
 13
 Doyle had, in fact, been convicted of and imprisoned for child neglect.[7] Yet, during trial, the prosecutor represented, both to defense counsel and the trial judge, that there was no such conviction on Doyle's official record.
 
 
 14
 A. Requests, Representations, and Rulings Regarding the Exculpatory Evidence
 
 
 15
 The question of Doyle's record arose several times during the trial. There were three discussions at the bench. The first sidebar took place on the third day of the trial when Doyle's brother was testifying for the Commonwealth. Defense counsel informed the court and the prosecutor that McCambridge's testimony about the altercation in the van would refer to his understanding that Doyle had been convicted for child abuse. Defense counsel stated that he saw no reason to question Doyle's brother about the decedent's conviction unless the prosecutor was going to argue that McCambridge was lying. The prosecutor said he had not yet decided whether he would challenge McCambridge's veracity regarding Doyle's conviction. Due to the prosecutor's ambivalence about his plans in this regard, the defense was unable to resolve, at this point, whether to question Doyle's brother about the conviction. Therefore, the court ordered that the witness be held over for possible later questioning by the defense. During this initial sidebar, the prosecutor was put on notice that the record of Doyle's conviction was exculpatory because it corroborated McCambridge's anticipated testimony.
 
 
 16
 The second sidebar on the issue of Doyle's conviction occurred during defense counsel's direct examination of McCambridge. The prosecutor objected, on hearsay grounds, to McCambridge's reference to the conviction when he described the threat allegedly made by Doyle a month before the killing. The court overruled the prosecution's objection on the ground that the testimony was not being offered for the truth of the conviction, but rather to establish McCambridge's state of mind with respect to his fear of being killed by Doyle. The prosecutor replied that he thought the prejudicial effect of the evidence outweighed its probative value. The following exchange took place:
 
 
 17
 THE COURT: Do we have a conviction on this charge?
 
 
 18
 DEFENSE: Do I have a certified copy of the conviction? I do not. But I assert that it is true, that he was convicted for this charge. ... I don't think my brother can say to your Honor that, in fact, he was not convicted. I've read the newspaper articles about it.
 
 
 19
 COURT: Has anyone checked his probation record?
 
 
 20
 PROSECUTOR: It just says -- it doesn't say what for. I have no idea what it's for.
 
 
 21
 COURT: Okay. I'll tell them that it's not being offered for the truth of the matter.[8]
 
 
 22
 The key event during the second sidebar was the prosecutor's representation that he had looked at Doyle's record but had found it to be unclear.[9]
 
 
 23
 The question of the conviction arose again shortly after the second sidebar. Despite the court's ruling that the jury would be told that McCambridge's testimony regarding Doyle's conviction was not being offered for the truth of the matter, the prosecutor attempted to raise doubts about the fact of the conviction during his cross-examination of the defendant.
 
 
 24
 PROSECUTOR: You said that you had an argument with Mr. Doyle sometime prior to this in September and you said that he was involved in a problem of child molestation; is that correct?
 
 
 25
 DEFENDANT: I was told that. . . .
 
 
 26
 ***
 
 
 27
 PROSECUTOR: You know Mr. Doyle is deceased; isn't that correct, sir?
 
 
 28
 DEFENDANT: He certainly is.
 
 
 29
 PROSECUTOR: He can't refute your allegations right now; can he?
 
 
 30
 DEFENSE: Objection to that, your Honor.
 
 
 31
 THE COURT: Sustained.
 
 
 32
 This line of questioning foreshadowed the prosecutor's reference to Doyle's conviction in closing argument.[10] It also explains the concern expressed by defense counsel at the third sidebar, held on the fourth day of trial just before the defense rested.
 
 
 33
 At this third and last sidebar, the court again asked the prosecutor whether he had checked Doyle's record and the defense requested that the prosecution produce the record. Defense counsel also referred to the possibility of recalling Doyle's brother to establish the conviction, which he again indicated he would not do unless the prosecutor was going to argue that McCambridge was lying about it:
 
 
 34
 DEFENSE: He is maligning [the defendant's] character, you know, as if there is some evidence in the case that he [the victim] wasn't really in jail.
 
 
 35
 PROSECUTOR: He wasn't in jail, Judge. .
 
 
 36
 THE COURT: Did you check his record?
 
 
 37
 PROSECUTOR: He wasn't in jail, Judge.
 
 
 38
 THE COURT: Was he convicted?
 
 
 39
 PROSECUTOR: No. No.
 
 
 40
 DEFENSE: Do you have his record? Let's make it part of the
 
 
 41
 PROSECUTOR: No. I'm not going to make it a part. That's your case, sir. . . . So, as far as I know, he's never been in jail a day of his life.
 
 
 42
 * * *
 
 
 43
 DEFENSE: Your Honor, I don't have access to his criminal record. . . . So if he's got a criminal record, this is an important issue, it seems to me. I would like it produced so we can all see whether or not he did have a criminal record and what, if anything, he was convicted of. I'm concerned about it. I don't want to make it part of the case. On the other hand, I don't want to open it up for argument that I didn't prove that he had one and, therefore, my guy was lying.
 
 
 44
 * * *
 
 
 45
 PROSECUTOR: . . . [A]s far as I know, there is no record that Mr. Doyle had any convictions.
 
 
 46
 THE COURT: What do you intend to argue?
 
 
 47
 PROSECUTOR: . . . I am going to argue the facts of the case, Judge. That's all I'm going to argue.
 
 
 48
 THE COURT: There's inferences the jurors may want to draw from those facts. Are you
 
 
 49
 PROSECUTOR: But you can't draw an inference from something where there's no conviction of a guy. I mean, the guy [McCambridge] gets up there and says [Doyle's] done time when I know he hasn't from the records that I've seen. And, if he's got the records, he can
 
 
 50
 THE COURT: But this was offered really for state of mind, not for the truth of it, not as to whether or not he did, in fact, do any time or anything like that. Therefore, I don't know if it's appropriate to argue whether he did or he didn't. I am allowing it only for the state of mind of the defendant.
 
 
 51
 PROSECUTOR: Then that's all I'm going to argue, Judge.
 
 
 52
 At the third sidebar, defense counsel expressed a willingness to keep the existence of the conviction out of the case in compliance with the judge's ruling. However, he also voiced concern that the prosecutor would use the absence of evidence confirming the conviction to cast doubt on McCambridge's credibility. In addition, defense counsel directly asked the prosecutor for Doyle's record.
 
 
 53
 During these sidebar discussions and rulings, the prosecutor made two kinds of statements about Doyle's criminal record. First, the prosecutor made qualified statements that Doyle had no criminal record by saying, "as far as I know." However, at other moments, the prosecutor more definitively denied that Doyle had been convicted by answering the court's questions with a simple "No, no" or saying, "I know he hasn't [been convicted] from the records that I've seen."
 
 
 54
 Doyle's criminal record was in the Criminal Offender Record Information System (CORI) of Massachusetts. A person's CORI report lists his or her court appearances and convictions, if any.[11] The Commonwealth has represented to the state courts and to us that at trial the prosecutor had only the first page of Doyle's three-page CORI report; the relevant conviction appears on the second page.[12] The Commonwealth contends that it did not violate the requirements of Brady for three reasons. First, it says that the prosecutor disclosed all the information he had about Doyle's criminal record because the incomplete CORI print-out did not indicate that Doyle had ever been convicted for child abuse. Second, the Commonwealth contends that McCambridge should have been more diligent in requesting that the record be produced because the prosecutor qualified his representation that Doyle had no criminal record by saying, "as far as I know." Finally, the Commonwealth argues that McCambridge was required to object to the prosecutor's nondisclosure of Doyle's criminal record.
 
 
 55
 1. Evidence in the possession of the government
 
 
 56
 Under well-settled law, a prosecutor's duty to disclose exculpatory evidence extends beyond his or her personal knowledge of such evidence. See Kyles v. Whitley, 514 U.S. 419, 437 (1995) (describing the prosecutor's duty "to learn of any favorable evidence known to the others acting on the government's behalf in the case"). This duty exists because the prosecutor is the representative of the government in proceeding against a defendant in a criminal case. See Giglio v. United States, 405 U.S. 150, 154 (1972) ("The prosecutor's office is . . . the spokesman for the Government."). Therefore, a state prosecutor may be held accountable, in appropriate circumstances, for the nondisclosure of Brady material in the possession of a state agency without regard to the prosecutor's personal knowledge of the existence of that material. See Strickler, 527 U.S. at 282 (discussing nondisclosure of Brady material "known to the Commonwealth" but apparently not to the prosecutor); United States v. Agurs, 427 U.S. 97, 111 (1976).
 
 
 57
 While the above cited cases involved evidence known to the police, their logic applies to the instant case where Doyle's record was in the CORI database. The prosecutor requested Doyle's criminal record from the Board, an agency established to coordinate the exchange of information among law enforcement personnel, including prosecutors and police officers. Based on the information he received from the Board, the prosecutor made inaccurate representations to the court and to the defense that Doyle had no criminal record. Under these circumstances, the Commonwealth is responsible for the nondisclosure regardless of the prosecutor's actual personal knowledge. See Kyles, 514 U.S. at 437-38 (holding that a prosecutor's ignorance of exculpatory evidence not produced by a state agency does not insulate the government from responsibility for a Brady violation). Accordingly, the prosecutor's statement that Doyle had no criminal record "as far as I know" does not relieve the Commonwealth of its obligations under Brady and its progeny because the prosecutor's personal awareness of Doyle's conviction is irrelevant.
 
 
 58
 2. Defense obligation to request exculpatory evidence
 
 
 59
 The Commonwealth also argues that defense counsel should have filed a formal discovery request for Doyle's criminal record. There is no legal support for this contention. Brady obligations apply independently of any request by the defense. See Strickler, 527 U.S. at 280 ("[T]he duty to disclose [exculpatory] evidence is applicable even though there has been no request by the accused.") (citing Agurs, 427 U.S. at 107). The prosecutor in this case was on notice from the time of the first sidebar conference that evidence substantiating McCambridge's claim that Doyle had a criminal record would be favorable to McCambridge's theory of self-defense. There was no need for McCambridge to request that evidence specifically.
 
 
 60
 The Commonwealth also asserts that it was not obligated to disclose evidence of Doyle's conviction because the defense could have found that evidence through a reasonably diligent investigation. See, e.g., United States v. Rodriguez, 162 F.3d 135, 147 (1st Cir. 1998) ("The government has no Brady burden when the necessary facts . . . are readily available to a diligent defender."). However, as we have said, McCambridge could not access the CORI database without a court order. See Mass. Gen. Laws ch. 6, § 172. Moreover, the Commonwealth's argument about the ready availability of evidence misses the point in an important way. This was not a case where the defense simply refused to look for evidence it knew existed and relied on the prosecution to disclose that evidence. Rather, the prosecutor misrepresented, to both defense counsel and the court, that the exculpatory evidence did not exist. Defense counsel was entitled to rely on that representation. See Strickler, 527 U.S. at 283 n.23. Under these circumstances, McCambridge was not obligated to inquire further.
 
 
 61
 The Commonwealth argues that the prosecutor's statements that Doyle had no criminal record "as far as I know" should have alerted defense counsel to the possibility that such a record did exist but was simply not personally known to the prosecutor. Because the prosecutor expressed this uncertainty, the Commonwealth asserts, McCambridge and his lawyer should have been more diligent in confirming whether the prosecutor's qualified statements were, in fact, true. The Commonwealth cites no authority for this argument, and we have found none. Under well-settled law, as we have explained, Brady obligations apply to a prosecutor's conduct even when the defense has not requested the discovery of exculpatory evidence. See Strickler, 527 U.S. at 280; Agurs, 427 U.S. at 107. Moreover, McCambridge's lawyer reasonably relied upon the prosecutor's assertions that Doyle had never been convicted, see Strickler, 527 U.S. at 283 n.23, and because the prosecutor was acting in his capacity as representative for the government, see Kyles, 514 U.S. at 437, defense counsel was also reasonable in concluding that the prosecutor's denials indicated that such evidence of a conviction did not exist at all.
 
 
 62
 3. Requirement to object to the nondisclosure of exculpatory evidence
 
 
 63
 Finally, the Commonwealth argues that McCambridge was required to object to the prosecutor's inaccurate representation about Doyle's record. We again invoke Strickler's holding that "defense counsel may reasonably rely" on a prosecutor's representation that she has complied fully with Brady, Strickler, 527 U.S. at 283 n.23, thus rendering unnecessary an objection to the nondisclosure of that evidence.
 
 
 64
 In Strickler, the prosecutor maintained an "open file" policy, meaning that "his entire prosecution file was made available to the defense." Id. at 283 n.22. While it is not clear from the record whether the Commonwealth maintained an open file policy in this case, the prosecutor's statements to defense counsel and to the court that Doyle had no criminal record constitute essentially the same representation at issue in Strickler: that the prosecution had fulfilled its constitutional duty under Brady. Under such circumstances, defense counsel is not required to object. The Supreme Court rejected such a requirement in Strickler: "The presumption, well established by tradition and experience, that prosecutors have fully discharged their official duties, is inconsistent with the novel suggestion that conscientious defense counsel have a procedural obligation to assert constitutional error on the basis of mere suspicion that some prosecutorial misstep may have occurred." Strickler, 527 U.S. at 286-87 (citation and internal quotation marks omitted).
 
 
 65
 The Commonwealth argues, again, that the prosecutor's occasional use of the words "as far as I know" excuses its failure to disclose the exculpatory evidence because such equivocal language should have indicated to the defense that a specific objection to the nondisclosure was necessary. We reject this argument for the same reasons we rejected it in determining whether McCambridge was obligated to pursue a more thorough investigation of Doyle's criminal record: the Commonwealth cannot escape its Brady obligations by qualifying its nondisclosure of exculpatory evidence and then shifting its disclosure burden to defense counsel. Moreover, the potential mischief invited by the Commonwealth's argument provides strong reason for rejecting it.
 
 B. The state court decision
 
 66
 McCambridge argued to the Massachusetts Appeals Court that the prosecution did not fulfill its disclosure obligations under Brady. For example, he stated in his opening brief:
 
 
 67
 The suppression of material evidence favorable to the accused and requested by him violates the due process clause of the Fifth Amendment. Brady v. Maryland, 373 U.S. 83, 87 (1963). In the case at bar, because the trial court refused to require the Commonwealth to produce Doyle's criminal record, the defendant cannot prove that exculpatory evidence was withheld. The defendant did everything he could to preserve this issue. Compare this case with Commonwealth v. O'Brien, 419 Mass. 470, 477 (1995). Thus, this Court should order the Commonwealth to produce Doyle's criminal record so that an appellate decision can be made. In the alternative, the case should be remanded to the Superior Court for production of the document at issue.
 
 
 68
 If Doyle had a criminal record as described by the defendant at trial, then the withholding of that information and the misleading of the defense was intentional and prejudicial. See Commonwealth v. Tucceri, 412 Mass. 401 (1992). A new trial would be required.
 
 
 69
 As this passage from McCambridge's brief reveals, he articulated a claim under Brady, with appropriate citations, and argued that the prosecutor's nondisclosure of Doyle's record - if the record indeed existed - prejudiced him.
 
 
 70
 The prosecution finally disclosed Doyle's criminal record after McCambridge filed his brief to the appeals court. With the benefit of this disclosure, McCambridge refined his Brady argument in his reply brief:
 
 
 71
 In United States v. Bagley, 473 U.S. 667 (1985), the Supreme Court recognized that an incomplete response to a specific request for disclosure not only deprives the defense of the specific evidence, but also suggests to the defense that such evidence does not exist. The defense's reliance on such a misleading representation can result in important changes in trial strategy. In the case at bar, the defendant was specifically misinformed about Doyle's criminal record. The defendant then gave up his strategy of attempting to elicit information about that record from Doyle's brother or the Clerk of the Norfolk Superior Court. The prosecutor fully exploited his misrepresentation in closing argument.
 
 
 72
 The state constitutional and/or common law standard for a Brady violation does consider the issue of bad faith. See, Commonwealth v. Tucceri, 412 Mass. 401 (1992). Where bad faith has been demonstrated, and the withheld evidence might have affected the outcome of the trial, the defendant is entitled to a new trial. In the absence of bad faith, a new trial is necessary if the withheld evidence would have been a real factor in the jury's deliberation. In the case at bar, the defendant's truthfulness about the circumstances of his confrontation with Doyle was the central issue in the case. The blocking of the Commonwealth's claim, that the so-called argument about Doyle's child abuse record was only the defendant's attempt to assassinate Doyle's reputation, would have been a real factor in the jury's deliberation, and probably would have tipped the scales in favor of the defendant.
 
 
 73
 Again, McCambridge identified the proper legal authority for his Brady claim and explained why he was prejudiced by the prosecutor's failure to fulfill his disclosure obligations.
 
 
 74
 McCambridge's Brady claim was thus fully presented to the Massachusetts Appeals Court. In its opinion affirming McCambridge's conviction and sentence, the appeals court addressed the issue of Doyle's record only briefly: "While the defendant pressed for the introduction of the victim's criminal record at trial, he did not object when the judge did not order its production or request that the record be marked for identification. He cannot now be heard to complain that the judge failed to do so at the sentencing stage." McCambridge, 690 N.E.2d at 475. The court did not seem to recognize the Brady implications of Doyle's criminal record - despite McCambridge's argument on the issue in both his opening and reply briefs.
 
 
 75
 Under the new standard for federal habeas review, we must examine the state court determination of McCambridge's Brady claim to determine whether it is contrary to or an unreasonable application of clearly established federal law. See 28 U.S.C. § 2254(d)(1). The Supreme Court has said the following with respect to the "contrary to" prong of § 2254(d)(1):
 
 
 76
 The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. . . . A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.
 
 
 77
 Williams v. Taylor, 529 U.S. 362, 405-06 (2000). The Massachusetts Appeals Court did not explicitly identify a legal rule in finding that McCambridge could not "now be heard to complain" about the nonproduction of Doyle's record because he did not object when the trial court judge failed to order its production. McCambridge, 690 N.E.2d at 475. However, we discern in this reasoning reliance on a legal rule that would require a criminal defendant to object to the prosecution's nondisclosure of exculpatory evidence where the prosecution has represented that such evidence does not exist. As we have explained, Strickler held that defense counsel is not required to object to the nondisclosure of exculpatory evidence where the prosecutor has represented that she has discharged fully her Brady obligations. Strickler, 527 U.S. at 289. Accordingly, the opinion of the Massachusetts Appeals Court denying McCambridge's Brady claim, in part, because he failed to object at trial is contrary to clearly established federal law as determined by the Supreme Court.[13]
 
 C. Adequate and Independent State Ground
 
 78
 The Commonwealth asserts that our review of McCambridge's habeas petition is precluded because there is an adequate and independent state ground for the state appeals court decision. Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991). Noncompliance with a state procedural rule may preclude federal review: "The [adequate and independent state ground] doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement. In these cases, the state judgment rests on independent and adequate state procedural grounds." Id. at 729-30. In this case, the Commonwealth contends that the appeals court's reliance on the Massachusetts rule requiring contemporaneous objections provides such an adequate and independent state ground.
 
 
 79
 We have already addressed and rejected the Commonwealth's argument that McCambridge had an obligation to object to the government's failure to disclose Brady material. As we have explained, there is no such obligation under federal law. Indeed, the Commonwealth has not identified any authority supporting its assertion that McCambridge was required to object. Our own review of Massachusetts case law has unearthed no case - except for the decision of the appeals court in this case - requiring an objection to the inaccurate representation by a prosecutor that exculpatory evidence sought by the defense has been disclosed. See, e.g., Commonwealth v. Hill, 739 N.E.2d 670 (Mass. 2000); Commonwealth v. Tucceri, 589 N.E.2d 1216, 1224 (Mass. 1992). For a state procedural rule to constitute an adequate and independent state ground barring federal habeas review, that rule must be consistently enforced in the state courts. See Moore v. Ponte, 186 F.3d 26, 32-33 (1st Cir. 1999). Even if a Massachusetts procedural rule requiring an objection to the nondisclosure of exculpatory evidence had been consistently enforced, such a rule would be unconstitutional under Strickler. Accordingly, we hold that there is no adequate and independent state ground supporting the decision of the Massachusetts Appeals Court that precludes our review of McCambridge's claim.
 
 IV. Prejudice
 
 80
 Our conclusion that the ruling by the appeals court requiring an objection to the prosecutor's nondisclosure is contrary to clearly established federal law does not end the Brady inquiry. Brady established both a rule of conduct - that prosecutors must disclose exculpatory evidence in the possession and control of the government - and a standard of prejudice that petitioners must satisfy to obtain relief for a prosecutor's failure to comply with that rule. See Strickler, 527 U.S. 281-82 (noting elements of a Brady claim). Accordingly, we must also assess whether the appeals court made an erroneous determination of prejudice under Brady, and if so, whether that erroneous determination is contrary to or an unreasonable application of clearly established federal law.
 
 
 81
 To prevail on his Brady claim, McCambridge must show that he was prejudiced by the prosecutor's failure to disclose the evidence of Doyle's criminal record. He must demonstrate "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id. "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Strickler, 527 U.S. at 289-90. See also United States v. Josleyn, 206 F.3d 144, 152 (1st Cir. 2000). That there was sufficient evidence on which to convict McCambridge does not establish that his trial was fair. See Kyles, 514 U.S. at 435.
 
 
 82
 We think it improbable that, standing by itself, McCambridge's inability to corroborate his testimony through the introduction of Doyle's conviction would have had an effect on the jury's verdict. However, as McCambridge has argued consistently, the prosecutor's summation, exploiting his misleading disclosure about Doyle's conviction, seriously prejudiced his case.
 
 
 83
 Immediately after the third sidebar, the defense rested and the parties made their closing arguments,[14] the pertinent parts of which follow:
 
 DEFENSE:
 
 84
 Now, I want to talk about one other thing that's not evidence in this case. Mr. McCambridge told you on the stand the reason that he and Mr. Doyle got into the fight, besides that they were both drinking and probably neither one thinking with great clarity, there had been an incident a couple of months previously where Mr. McCambridge says he had been told something about Mr. Doyle and confronted him with it.
 
 
 85
 The Judge admitted that evidence as evidence of Mr. McCambridge's state of mind; in other words, it's not evidence that Mr. Doyle ever did anything. There is no evidence in this case that Mr. Doyle ever molested or abused any child. . . . There is also no evidence in this case that he did it. There is simply no evidence in this case one way or the other. You don't know as you sit here whether what transpired, what Mr. McCambridge says transpired between the two of them, has any backing in reality or not. There is no evidence. There is no evidence that he did it. There is no evidence that he didn't do it. It was admitted for a different purpose, which was the state of mind.
 
 
 86
 Now, you have to decide whether or not something like that could cause that explosion in the car, that eruption of bad blood when people had been drinking. Mr. McCambridge told you that he made some comment to this person that enraged him, and he had been threatened before.
 
 
 87
 ***
 
 PROSECUTION:
 
 88
 Does the defendant have something for you to believe when he gets up there and says, oh, yeah, I had an argument with Richard Doyle because of child molestation? There is absolutely evidence of that.[15] Was that put in there to tell you what his frame of mind was? No. That was his third shot at the victim from the stand, assassinating his reputation with no evidence. That's what that was for, I suggest to you, not to show state of mind.
 
 
 89
 In compliance with the ruling of the judge, the defense argued in its summation that whether or not Doyle had been convicted of child abuse was relevant only to establish McCambridge's state of mind. In contrast, the prosecutor ignored the court's ruling, as well as his representation that he would abide by that ruling, and used the absence of exculpatory evidence he failed to produce to impugn McCambridge's credibility. For reasons that are not clear from the record, defense counsel did not object to the prosecutor's closing argument. Normally, this omission would require McCambridge to show cause for his failure to object and prejudice from the prosecutor's closing argument. However, we conclude that the Commonwealth has not raised the issue of McCambridge's procedural default and has thus waived that argument.
 
 A. Waiver of Waiver
 
 90
 Massachusetts has a "routinely enforced, consistently applied contemporaneous objection rule" regarding improper closing argument. Burks v. DuBois, 55 F.3d 712, 716 (1st Cir. 1995). Without a timely objection, Massachusetts courts will not review appellate claims of improper summation unless cause and prejudice are demonstrated, except to ensure that a miscarriage of justice has not occurred. See Commonwealth v. Stote, 739 N.E.2d 261, 268 (Mass. 2000). When the Massachusetts courts apply the procedural default rule, federal review of an improper summation claim is similarly foreclosed because failure to observe state procedural rules can provide an adequate and independent state ground for the decision. Palmariello v. Superintendent of M.C.I. Norfolk, 873 F.2d 491, 493 (1st Cir. 1989).
 
 
 91
 The Commonwealth did not argue in the federal district court that McCambridge procedurally defaulted by not objecting to the prosecutor's closing argument.[16] Indeed, even after receiving three extensions of time to file a brief in the federal district court, the Commonwealth failed to file a timely brief.[17] "[T]his circuit religiously follows the rule that issues not presented to the district court cannot be raised on appeal." Ouimette v. Moran, 942 F.2d 1, 12 (1st Cir. 1991). In similar circumstances, we have found that the Commonwealth waived objections to arguments of a habeas petitioner where the petitioner did not make those arguments at trial:
 
 
 92
 Neither in briefing nor in oral argument in this court did the state argue that Fortini's failure to raise the constitutional issue at the trial stage precludes the argument in federal court. We conclude that the state has itself waived any objection to the habeas petition based on Fortini's failure to raise the constitutional issue at trial.
 
 
 93
 Fortini v. Murphy, 257 F.3d 39, 45 (1st Cir. 2001).
 
 
 94
 Also, litigants in federal habeas proceedings arising from state court convictions are generally required to raise all issues in the state courts. See Trest, 522 U.S. at 89; Coleman, 501 U.S. at 732 (noting that the independent and adequate state ground doctrine "ensures that the States' interest in correcting their own mistakes is respected"). The Commonwealth did not argue procedural default in any state proceedings. "[P]rocedural default is normally a defense that the State is obligated to raise and preserve if it is not to lose the right to assert the defense thereafter." Trest, 522 U.S. at 89 (internal quotation marks omitted); see also Commonwealth v. LaBriola, 722 N.E.2d 13, 14 n.1 (Mass. 2000). Where the state does not raise and preserve an argument of procedural default, federal appellate courts are not obligated to raise that procedural issue sua sponte. See Trest, 522 U.S. at 89. However, a federal court may, in its discretion, raise procedural default sua sponte even where the prosecution never presented that claim to any state court.[18] See Ortiz v. DuBois, 19 F.3d 708, 715 (1st Cir. 1994).
 
 
 95
 This case presents a weak basis for sua sponte consideration of McCambridge's procedural default. In contrast to other cases where we noticed procedural default sua sponte, here the Commonwealth failed to assert the argument in any state court. See, e.g., Brewer v. Marshall, 119 F.3d 993, 999 (1st Cir. 1997) (procedural default issue raised belatedly in district court habeas proceedings nonetheless had been fully briefed at both the state and federal levels). Additionally, the weakness of McCambridge's substantive claim is not apparent on the face of the record. In these circumstances, the position taken by the Third Circuit in a comparable case is compelling:
 
 
 96
 [W]here the state has never raised the issue at all, in any court, raising the issue sua sponte puts us in the untenable position of ferreting out possible defenses upon which the state has never sought to rely. When we do so, we come dangerously close to acting as advocates for the state rather than as impartial magistrates.
 
 
 97
 Smith v. Horn, 120 F.3d 400, 409 (3d Cir. 1997) (citing United States v. Burke, 504 U.S. 229, 246 (1992) (Scalia, J., concurring)). We therefore decline to consider, sua sponte, McCambridge's procedural default.
 
 B. State court decision
 
 98
 Next we examine the opinion of the Massachusetts Appeals Court to determine whether its conclusion that McCambridge was not prejudiced by the nondisclosure of the exculpatory evidence is contrary to or an unreasonable application of clearly established federal law. See 28 U.S.C. § 2254(d)(1). The appeals court did not identify any legal rule in its brief treatment of the prejudice issue. The court simply stated: "By convicting the defendant of manslaughter, the jury obviously credited the defendant's testimony that the struggle in the van was precipitated by the defendant's remark about this offense to Doyle." McCambridge, 690 N.E.2d at 475. To be sure, the state court's opinion addresses the prejudice issue by considering whether the prosecutor's nondisclosure affected the outcome of McCambridge's trial. This focus on the outcome of the proceeding is appropriate. See Bagley, 473 U.S. at 682 (defining prejudice as "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different"). However, we cannot determine from the appeals court's opinion whether it required that McCambridge demonstrate, to a reasonable probability, that there was an effect on the outcome - the Brady standard for prejudice - or used some other standard. Because it is impossible for us to discern the legal rule upon which the state court relied, we cannot analyze the court's opinion to determine whether that legal rule is contrary to clearly established federal law. Accordingly, we consider whether the appeals court decision on the prejudice issue is an unreasonable application of clearly established federal law as determined by the Supreme Court.
 
 The Supreme Court has said:
 
 99
 [A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. The federal habeas court should not transform the inquiry into a subjective one by resting its determination instead on the simple fact that at least one of the Nation's jurists has applied the relevant federal law in the same manner the state court did in the habeas petitioner's case.
 
 
 100
 Williams, 529 U.S. at 409-10. Attempting to give some meaning to "unreasonable," the Court also noted that "the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410. We conclude that the state court's conclusion that "the jury obviously credited [McCambridge's] testimony," because it convicted him of manslaughter, is an unreasonable application of federal law. To explain, we describe the evidence presented at McCambridge's trial.
 
 1. The evidence
 
 101
 The prosecution alleged at trial that McCambridge shot and killed Doyle shortly after the two men left a bar in Cambridge at 1 a.m., and that McCambridge was driving, with Doyle's body in the back of the van, when a state trooper tried to stop the van. The prosecution further alleged that the van crashed when McCambridge reached for a gun, intending to shoot the police officer attempting to apprehend him. However, the evidence presented by the Commonwealth at trial to prove this theory was conflicting and inconclusive.
 
 
 102
 a. Time of death
 
 
 103
 The doctor who performed the autopsy on Doyle testified that Doyle had last consumed alcohol approximately one and one half hours before his death. It is undisputed that Doyle and McCambridge left the bar when it closed at 1 a.m. and that the accident occurred at about 2 a.m. Thus, if credited by the jury, the doctor's uncontradicted opinion tended to diminish any possibility that Doyle's death occurred much before the crash occurred, let alone just after the two men left the bar at 1 a.m. Another prosecution witness, an EMT responding to the accident, testified that Doyle's skin was still warm when his body was found pinned beneath the van, thus tending to establish that Doyle died not long before the accident, particularly in light of the uncontradicted testimony that it was cold that night.
 
 
 104
 b. The weapons
 
 
 105
 The evidence was also inconclusive with respect to McCambridge's ownership of and possession of a gun. The prosecution tried and failed to establish that McCambridge was carrying a gun in the waistband of his pants before he was in the van. The bartender testified that McCambridge became angry when the bartender started to close up the bar. He said that McCambridge stood up and brushed up against him, chest to chest, while pushing his coat back. When asked by the prosecutor whether he saw McCambridge "reach for anything," the bartender said no. The bartender also testified that McCambridge did not seem to be angry with Doyle when the two men left the bar.
 
 
 106
 A firearms officer testified that McCambridge shot Doyle twice with a derringer. When emergency personnel were removing McCambridge's jacket after the accident, the derringer fell to the floor of the ambulance. However, the firearms officer did not trace the derringer to establish who owned it. Nor did he attempt to identify the owner of the 9 mm. pistol with which Doyle allegedly had threatened McCambridge. Another Massachusetts police officer testified that a box of ammunition fitting one of the two guns and labeled "Big Al's Gun Shop" was found in the van. However, the box of ammunition was never introduced into evidence and the police officer had no other information about it.
 
 
 107
 c. Location of the bodies
 
 
 108
 To bolster its theory that McCambridge had killed Doyle up to an hour before the accident, the prosecution attempted to establish that McCambridge was driving when the van crashed. Forensic witnesses testified that blood on the seat of McCambridge's pants was consistent with Doyle's blood, supporting an inference that McCambridge sat in the driver's seat at some point. However, there was also evidence that there was not enough blood on his pants to suggest that he sat there for long.
 
 
 109
 There was other conflicting evidence about the probable location of McCambridge's body and Doyle's body at the time of the accident. A prosecution witness testified that: (1) the passenger side window was broken; (2) glass from the passenger side window was found on McCambridge's collar and under his jacket but none was found on Doyle; and (3) if someone had been sitting in the passenger seat at the time of impact, he would have been thrown to the right into the windshield or the passenger door window. The prosecution offered no explanation as to how or why, under its theory of the case, McCambridge might have been in the passenger seat at the time of the impact.
 
 
 110
 The defense tried to show that it was not clear where the two bodies had been located prior to the crash and roll-over. The defense accident reconstructionist testified that the driver of the van could have been thrown between the bucket seats and out of the side door when the van was lifted into the air. The evidence was undisputed that after the accident the sliding door on the passenger side of the van was off its bottom hinges. The witnesses agreed that Doyle had been thrown from the car through this doorway. Because the fabric of his sweater had actually fused to the van, one investigator testified that Doyle's ejection must have been the result of a major impact that generated the heat necessary to accomplish the fusion. This evidence indicated that Doyle could have been driving at the time of the crash, and did not establish whether Doyle, if he had not been driving, was placed in the back of the van by McCambridge prior to the accident or was thrown there upon impact.
 
 
 111
 Police officers, emergency medical personnel and civilians agreed that McCambridge was found wedged in the driver's seat area. Yet blood and hair sample tests established, without contradiction, that McCambridge's head hit the passenger side of the windshield during the crash. Uncontradicted testimony also established that McCambridge had a gash in his head and was covered with blood when he was found.
 
 
 112
 d. The police investigation and handling of evidence
 
 
 113
 There were other questions left unanswered by the investigators. The accident reconstructionist for the state police had no photographs of the tire marks on the road and could not explain the absence of such important and apparently routine evidence.[19] He also admitted during cross-examination that he had made mistakes in drawing the accident scene; he was not sure what one line was intended to indicate and a second line purporting to represent the track of one tire in fact traced the track of a different tire. Like the forensic chemist, he became confused regarding the physical principles for determining the direction the bodies would have moved when the van hit the barrier.
 
 
 114
 Another state investigator failed to document where things were located before they were removed from the van by the police. She was unaware of any inventory that might have been made of the "heaps of stuff" that had been in the van, which included trash bags, clothing, newspapers and debris. She also stated that the nine millimeter gun, which was loaded and cocked and allegedly used to threaten McCambridge, was found under a great deal of debris. Although the prosecution alleged that the van was weaving because McCambridge was reaching for this same gun in order to shoot the trooper who was trying to pull him over, there was no testimony as to whether the debris would have been on top of the gun before the crash or whether the gun itself would have moved during the crash. Moreover, the investigator could not say whether bloodstains of Doyle's blood type found in the back of the van were recent or even whether they had been made by the police as they removed items from the van. Some of the items that had fallen onto the road during the crash had been thrown back into the van before it was towed away, thus possibly causing contamination and making it harder yet to reconstruct the accident.
 
 
 115
 e. Self-Defense
 
 
 116
 In support of his self-defense claim, McCambridge testified that Doyle became aggressive after McCambridge called him a name referring to his conviction for child abuse. He also stated that he remembered nothing after the first shot he fired at Doyle until three to four days later when he was in the hospital. However, a defense medical expert explained that a person might become more aggressive after receiving the type of wound Doyle received when hit by the first bullet. Dismissing McCambridge's amnesia as "convenient," the prosecutor called no medical experts to challenge the inference that such a memory loss could be attributed to both shock and the serious head wound McCambridge sustained in the accident. Other than McCambridge's own testimony, the record is devoid of evidence bearing on whether McCambridge was in reasonable fear of serious bodily injury or death when he shot Doyle.
 
 2. The verdict
 
 117
 The jury began deliberating at approximately 1:30 p.m. and returned its verdict the afternoon of the following day.[20] At the end of the first day's deliberations, the jury asked for clarification on (1) unlawful killing, (2) malice aforethought, (3) burden of proof and (4) reasonable doubt. The following day, the jury requested clarification of manslaughter. That afternoon, the jury returned a verdict finding McCambridge guilty of the crime of manslaughter, unlawful possession of a firearm, operating under the influence, and operating to endanger.
 
 
 118
 In returning a verdict of manslaughter, the jury rejected the prosecutor's theory that McCambridge acted with either premeditation or malice aforethought. Its rejection of the murder charge left the jury with only two options on the charge of unlawful killing: manslaughter or acquittal. The prosecutor's insinuation that McCambridge fabricated his testimony to besmirch Doyle's reputation was the last thing the jury heard from either lawyer. This improper undermining of McCambridge's credibility on the determinative question of self-defense, and perhaps of his credibility in general, may well have tipped the balance in favor of a manslaughter conviction. Thus, we conclude that there is a reasonable probability that the outcome of McCambridge's trial would have been different if the existence of Doyle's conviction had been disclosed and the prosecutor had not suggested in closing argument that McCambridge was fabricating Doyle's conviction.
 
 
 119
 Our conclusion is consistent with our decision in United States v. Udechukwu, 11 F.3d 1101 (1st Cir. 1993), where we considered the prejudicial effect of a prosecutor's closing argument questioning the existence of exculpatory evidence the defendant claimed existed but which the prosecution failed to disclose.[21] The defendant in that case, charged with smuggling illegal drugs into the United States from Aruba, presented a defense of duress. She testified that a man named Michael Mouma had threatened to harm her children if she did not transport drugs for him. Defense counsel tried to obtain evidence from the prosecution to corroborate the defendant's testimony regarding Mouma and the circumstances under which she agreed to smuggle the drugs. Although the government had information that Mouma did exist, was in Aruba, and had been a drug trafficker, that exculpatory information was never disclosed to the defense. The prosecutor then used the absence of information about Mouma to challenge Udechukwu's credibility in closing argument. In Udechukwu, as here, the defendant asserted on direct appeal[22] that the prosecution's Brady violation was magnified by the improper summation. We stated:
 
 
 120
 The inferences and the direct challenge to the existence of a source named Michael, however, when the prosecution had unearthed evidence that he existed and was a prominent dealer in narcotics, is indefensible. Here we find a kind of double-acting prosecutorial error: a failure to communicate salient information, which, under [Brady and Giglio] should be disclosed to the defense, and a deliberate insinuation that the truth is to the contrary.
 
 
 121
 Id. at 1106.
 
 
 122
 As in the instant case, there was no question in Udechukwu that the defendant committed the acts alleged by the prosecution. Udechukwu's defense of duress, like McCambridge's claim of self-defense, depended entirely on her credibility. In Udechukwu, the evidence not disclosed by the prosecution only partly substantiated her defense because the fact that Mouma existed, lived in Aruba, and had been involved in illegal narcotics did not establish that Mouma ever threatened Udechukwu or asked her to smuggle drugs. Nevertheless, we reversed Udechukwu's conviction and remanded for a new trial because we concluded that she was prejudiced by the prosecutor's improper attack on the crucial issue of her credibility: "Whether the government's failure to disclose this credibility-strengthening information could be said to be reversible error, we need not decide. We have no doubt, however, that the prosecutor's persistent theme in closing argument suggesting the nonexistence of this information . . . did fatally taint the trial." Id. at 1105.[23] Thus, we conclude that the prosecutor's insinuation during closing argument that McCambridge had lied about Doyle's criminal record likewise tainted the McCambridge trial.
 
 
 123
 Nevertheless, our conclusion that McCambridge was prejudiced by the prosecution's failure to disclose Doyle's conviction is not sufficient to warrant the issuance of a writ of habeas corpus. We must also conclude that the determination of the appeals court on this issue was an unreasonable application of clearly established federal law as articulated by the Supreme Court. See 28 U.S.C. § 2254(d)(1). The appeals court found no prejudice because it concluded that the jury must have believed McCambridge's account of the struggle and its cause given his conviction for manslaughter: "By convicting the defendant of manslaughter, the jury obviously credited the defendant's testimony that the struggle in the van was precipitated by the defendant's remark about [the conviction] to Doyle." McCambridge, 690 N.E.2d at 475.
 
 
 124
 As we have noted, the court made this decision without additional analysis or citation to any federal authority on Brady claims. It did not even identify the legal rule upon which it relied in deciding that McCambridge was not prejudiced by the nondisclosure of Doyle's record. Moreover, the court's conclusion that the jury "obviously credited" McCambridge's testimony is not reflected in the verdict. The jury's conviction of McCambridge on two of the three motor vehicle offenses indicates unmistakably that they concluded that he was driving the van at some point, a determination that required rejecting substantial parts of his account of the altercation with Doyle, the shooting, and the accident.
 
 
 125
 In sum, the conclusion of the Massachusetts Appeals Court is unduly speculative.[24] The jury may well have reached a manslaughter verdict for any number of reasons having nothing to do with its crediting of McCambridge's insistence that the struggle was precipitated by his remark about Doyle's conviction. The only point we can make with certainty about the jury's evaluation of McCambridge's claim of self-defense is that the jury did not credit his testimony sufficiently to acquit him. Rather, their verdict reflected a negative judgment as to McCambridge's credibility, in a case where the Commonwealth's evidence was circumstantial and, on important points, inconclusive. Therefore, the state appeals court's erroneous conclusion that the outcome of McCambridge's trial would not have been different had the evidence of Doyle's conviction been disclosed also constitutes an unreasonable application of clearly established federal law regarding prejudice in the Brady context.
 
 V. Conclusion
 
 126
 Just before closing argument in this case, defense counsel voiced concern to the trial judge and the prosecutor that the prosecutor would emphasize the absence of evidence of Doyle's conviction during his summation. The prosecutor represented that he would abide by the judge's ruling that the existence of the conviction was not at issue. Regrettably, the prosecutor fully confirmed defense counsel's fear. He failed to perform the difficult, but vital, duty our system imposes on prosecutors -- to attempt to win convictions without undermining the fairness of the trial process. Such prosecutorial lapses are, and we trust will remain, the exception in this circuit. Here, the prosecutorial lapse resulted in a Brady violation unrecognized by a state court decision plainly incompatible with the standards of § 2254(d)(1).
 
 
 127
 Accordingly, the judgment of the district court is vacated, and the cause remanded with directions to issue the writ of habeas corpus unless, within 90 days from the date of this judgment, the Commonwealth has vacated the judgment of conviction and, if it so chooses, instituted proceedings to retry petitioner.
 
 
 128
 So ordered.
 
 
 
 Notes:
 
 
 [1]
 Section 2254(d)(1) provides:
 An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.
 
 
 [2]
 Specifically, the jury convicted McCambridge of operating a motor vehicle under the influence of alcohol and operating a motor vehicle to endanger, but acquitted him of operating a motor vehicle after the revocation of his driver's license.
 
 
 [3]
 The vehicular offense convictions were also affirmed; the conviction for illegal possession of a firearm was overturned due to an error in the instructions to the jury.
 
 
 [4]
 The United States District Court for the District of Massachusetts denied McCambridge's petition for a writ of habeas corpus in March, 2000 and subsequently denied his request for a certificate of appealability (COA). We granted a COA limited to the claim that the prosecution had failed to comply with the disclosure obligations imposed by Brady. We agreed with the district court's determination that McCambridge had not made the showing necessary to support the issuance of a COA as to the other two grounds specified in his petition. These claims challenged the admission into evidence of McCambridge's clothing, which the police removed from his hospital room without a warrant, and the court's failure to instruct the jury on the defense of necessity in connection with the charge of illegal possession of a weapon.
 
 
 [5]
 During McCambridge's sentencing hearing, defense counsel again requested that the prosecutor disclose evidence of Doyle's criminal record and asked that his record be marked for the record. The prosecutor objected to this request and the trial court sustained the objection.
 
 
 [6]
 The Commonwealth does not dispute that the evidence of Doyle's conviction was favorable to McCambridge.
 
 
 [7]
 Doyle's official record indicates that he was convicted of child neglect and was sentenced to two years, six months to be served and the remainder suspended, with the six month period of incarceration to be followed by a two year period of probation. McCambridge referred at trial to a conviction for child abuse. The Commonwealth does not argue that the abuse/neglect distinction has any bearing on its disclosure obligation.
 
 
 [8]
 This jury instruction was never given.
 
 
 [9]
 The Commonwealth's summary of the second sidebar in its brief on appeal omits both questions posed by the Court: (1) "Do we have a conviction on this charge?" and (2) "Has anyone checked his probation record?" It also omits the prosecutor's response: "It just says -- it doesn't say what for. I have no idea what it's for." The Commonwealth thus misrepresents the colloquy as a simple exchange in which defense counsel stated that he knew there was a conviction and the judge ruled that she would admit the defendant's testimony about the decedent's conviction and instruct the jury that it was not being offered for the truth of the matter.
 
 
 [10]
 The prosecutor's questions, posed in disregard of the court's ruling, closely followed a defense motion for a mistrial because the prosecutor defied an earlier ruling that he could not question McCambridge about a piece of evidence because the prosecutor had not laid a proper foundation for it. While this occurrence has no direct bearing on the Brady issue, it is another troubling example of the prosecution's failure in this case to abide by a ruling of the court.
 
 
 [11]
 CORI reports are kept by the Criminal History Systems Board of Massachusetts. The Board is responsible for collecting and organizing criminal offender record information. See Mass. Gen. Laws ch. 6, §a168 (2000). The Board is comprised of several law enforcement officials and associations. Private users of the system, victims of crime, and experts in personal privacy issues are also represented. The Board serves as a centralized repository for criminal record information and may disseminate information only to criminal justice agencies, agencies required to have access by statute, and other agencies or individuals "where it has been determined [by the Board] that the public interest in disseminating such information to these parties clearly outweighs the interests in security and privacy." Id. at § 172.
 
 
 [12]
 The Commonwealth has not contended (nor did the trial court suggest) that the defense had access to Doyle's CORI report in the absence of a court order or cooperation by the prosecution. Massachusetts law permits dissemination of these records only to agencies and individuals that the Board has certified. See Mass. Gen. Laws ch. 6, § 172.
 
 
 [13]
 We held recently that the deferential standard of § 2254(d)(1) does not apply in cases where the state court decision at issue did not decide the petitioner's constitutional claim on the merits. See Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001) ("AEDPA imposes a requirement of deference to state court decisions, but we can hardly defer to the state court on an issue that the state court did not address."). Because we found that there was no state court determination to which to defer in Fortini, we reviewed the petitioner's claim de novo. Id. Although there might be an argument that such a de novo standard of review applies here, we do not have to resolve that issue because of our conclusion that the decision of the Massachusetts Appeals Court cannot withstand review pursuant to the more deferential standard applied to state court determinations on the merits.
 
 
 [14]
 Massachusetts Rule of Criminal Procedure 24(a)(1) provides that "the defendant shall present his closing argument first."
 
 
 [15]
 We have reproduced the prosecutor's argument as it appears in the transcript of the trial as set forth in the record. Given the thrust of the prosecutor's argument, we must assume that either the court reporter or the prosecutor unintentionally omitted the word "no" before the word "evidence" in this sentence.
 
 
 [16]
 In its brief in this Court, the Commonwealth, for the first time, did note in passing that there was no objection to its summation, but it did not mention the possibility of a procedural bar to federal habeas review. The summation issue was disposed of in one paragraph. "There is also no merit to the petitioner's contention that he was prejudiced by the prosecutor's reference during closing argument to the fact that the victim's criminal record was not in evidence. Defense counsel, during his closing, had already expressly conceded this point by stating: 'There's no evidence in this case that Mr. Doyle ever molested or abused any child.' In any event, the petitioner did not object to the prosecutor's closing and the judge instructed the jury that counsel's arguments were not evidence." This statement is patently inadequate to raise an adequate and independent state ground argument with respect to the failure of the defendant to object to closing argument. See United States v. Fernandez, 145 F.3d 59, 63 (1st Cir. 1998) (issues mentioned in perfunctory manner, unaccompanied by argument, are deemed waived); Fed. R. App. P. 28(b).
 
 
 [17]
 Despite not receiving permission to file a brief after the expiration of the final deadline, the Commonwealth did so. We assume it was not considered by the district court.
 
 
 [18]
 We are in agreement with other circuit courts on this issue. See, e.g., Washington v. James, 996 F.2d 1442, 1448 (2d Cir. 1993); Smith v. Horn, 120 F.3d 400, 409 (3d Cir. 1997); Yeatts v. Angelone, 166 F.3d 255, 261 (4th Cir. 1999); Smith v. Johnson, 216 F.3d 521, 523-24 (5th Cir. 2000); Hernandez v. Cowan, 200 F.3d 995, 997 (7th Cir. 2000) (referring to "well-established doctrine" of "waiver of waiver"); Boyd v. Thompson, 147 F.3d 1124, 1128 (9th Cir. 1998); Hardiman v. Reynolds, 971 F.2d 500, 503 (10th Cir. 1992).
 
 
 [19]
 The defense expert testified that it was difficult to analyze the accident without a picture of the road marks and that it was standard procedure to carefully record such marks.
 
 
 [20]
 We are unable to tell from the record before us at what time the jury was dismissed for the evening on the first day, at what time it reconvened on the second day, or at what time it rendered its verdict on the afternoon of the second day.
 
 
 [21]
 Even though McCambridge suggests in his brief that Udechukwu is controlling, the Commonwealth neither distinguished nor cited it in its answering brief.
 
 
 [22]
 We considered Udechukwu's Brady claim on direct appeal, not collateral review. For purposes of evaluating McCambridge's Brady claim, Udechukwu applies; the only difference in our standard of review for the two cases is that we must take the additional step here of determining that the appeals court decision affirming McCambridge's conviction is contrary to or an unreasonable application of clearly established federal law.
 
 
 [23]
 Massachusetts law is consistent with our own. In Commonwealth v. Collins, 434 N.E.2d 964, 969 (Mass. 1982), the SJC stated: "When the failure to disclose is coupled with the blatant misrepresentation made by the prosecutor in his closing argument to the jury, the conclusion that the conviction cannot stand is inescapable."
 
 
 [24]
 The district court agreed with the Massachusetts Appeals Court that McCambridge had not been prejudiced by the prosecutor's nondisclosure. It concluded that the jury must have found enough plausibility in McCambridge's account to reject a first or second degree murder conviction: "[T]he jury must have accepted that [McCambridge's] provocation story at least raised some reasonable doubt in order to convict on manslaughter rather than first- or second-degree murder." This conclusion is unduly restrictive in its view that McCambridge received his due because he avoided a murder conviction. McCambridge was also entitled to fair consideration of his claim that he was not guilty of manslaughter.